UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------ :
                                      :       **CIVIL ACTION**

**Revere Investments, LLC**            :       **NO. _:__CV-___(___)**

**vs.**                                   :

**Clark Briner and Revere Capital, LLC**    :

                                        :       **MAY 14, 2013**

------------------------------------------------------------ :

<u>**NOTICE OF REMOVAL**</u>

      Pursuant to 28 U.S.C. §1446(a), Defendants, Clark Briner and Revere Capital, LLC

respectfully move this Court as follows:

      1.      The Defendants are parties to a civil action, captioned *Revere Investments, LLC v.*

*Clark Briner, et al.*, Docket No.:  UWY-CV-12-6019328-S, in the Connecticut Superior Court,

Judicial District of Waterbury, Complex Litigation Docket.

      2.      Each of the Defendants first received a copy of the summons and complaint in

that action on or about November 16, 2012.  The initial summons and complaint did not disclose

a basis for removal.  A copy of the initial Summons and Complaint is attached hereto as <u>Exhibit</u>

<u>A</u>.

      3.      Roger Saunders ("Saunders") subsequently filed a Motion to Intervene in that

action.  The Motion was first received by the Defendants on April 30, 2013.  A copy of

Saunders' Motion to Intervene (which includes a Proposed Complaint in Intervention) is attached

hereto as <u>Exhibit B</u>.

4.      Saunders' Proposed Complaint contains a claim arising under 15 U.S.C. § 1125(a), known as the Lanham Act.

5.      This claim, therefore, may be removed to this Court pursuant to 28 U.S.C. §1441(a) because this Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

6.      The remaining claims of Saunders' Proposed Complaint, as well as the claims of the initial Complaint, arise from a common nucleus of operative fact and are thus so related to the Lanham Act claim that they form part of the same case or controversy.  Accordingly, these claims may also be removed to this Court pursuant to 28 U.S.C. § 1441(a) because this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.      This Notice is timely filed pursuant to 28 U.S.C. §1446(b)(3) within thirty (30) days of Defendants' receipt of Saunders' Motion to Intervene and accompanying Proposed Complaint.

8.      Defendants have on this date notified said Superior Court of the State of Connecticut of the filing of this Notice of Removal.  A copy of the Defendants' Notice of Filing of Notice of Removal filed in the Superior Court is attached hereto as Exhibit C.

Wherefore, pursuant to the provisions of 28 U.S.C. §§1441 and 1446, Clark Briner and Revere Capital, LLC request that this action be removed from the Superior Court of the State of Connecticut, Complex Litigation Docket, Judicial District of Waterbury and henceforth proceed in this Court.

DEFENDANTS,
CLARK BRINER and REVERE CAPITAL, LLC

By_____

David S. Hoopes
Mayo Crowe LLC
CityPlace II
185 Asylum Street
Hartford, CT 06103-3426
Fax:  (860) 275-6819
E-mail:  dhoopes@mayocrowe.com
Federal Bar No.:  CT 06069
Its Attorneys

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, to all counsel and pro se parties of record on this 14th day of May, 2013, as follows:

Bruce A. Foodman, Esq.
One Morningside Drive N.
Building A, 3rd Floor
Westport, CT 06880
<u>Attorneys for Revere Investments, LLC</u>

Joseph M. Pastore, III, Esq.
Stephen A. DeBernardis, Esq.
Pastore & Dailey LLC
4 High Ridge Park, 3rd Floor
Stamford, CT 06905
<u>Attorneys for Roger L. Saunders</u>

David S. Hoopes
Mayo Crowe LLC
Attorneys for Clark Briner and Revere Capital, LLC
185 Asylum Street
CityPlace II
Hartford, CT 06103-3426
Telephone: (860) 275-6800
Fax:  (860) 275-6819
E-mail:  dhoopes@mayocrowe.com
Federal Bar No.: CT 06069

EXHIBIT A

## SUMMONS - CIVIL

JD-CV-1   Rev. 9-12
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

**See page 2 for Instructions**

- [ ] "X" if amount, legal Interest or property In demand, not including Interest and costs Is less than $2,500.
- [x] "X" if amount, legal Interest or property In demand, not including Interest and costs Is $2,500 or more.
- [ ] "X" if claiming other relief In addition to or in lieu of money or damages.

**TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.**

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 1061 Main Street, Bridgeport, CT 06604 | ( 203 )579-6527 | DECEMBER | 18 , 2012 |
| | | Month | Day | Year |

| [x] Judicial District | | At *(Town In which writ is returnable)* (C.G.S. §§ 51-346, 51-349) | Case type code *(See list on page 2)* |
|---|---|---|---|
| [ ] Housing Session | G.A. Number: | Bridgeport | Major: T   Minor: 90 |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| Law Offices of Bruce A. Foodman, LLC, One Morningside Dr. N., Bldg. A, Westport, CT 06880 | 401211 |

| Telephone number *(with area code)* | Signature of Plaintiff *(if self-represented)* |
|---|---|
| ( 203 ) 817-0858 | |

| Number of Plaintiffs: 1 | Number of Defendants: 2 | [ ] Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|---|
| First Plaintiff | Name: | REVERE INVESTMENTS, LLC | P-01 |
| | Address: | 20 KETCHUM STREET, WESTPORT, CT 06880 | |
| Additional Plaintiff | Name: | | P-02 |
| | Address: | | |
| First Defendant | Name: | BRINER, CLARK | D-01 |
| | Address: | 167 LONG NECK POINT ROAD, DARIEN, CT 06820 | |
| Additional Defendant | Name: | REVERE CAPITAL, LLC C/O CLARK BRINER | D-02 |
| | Address: | 167 LONG NECK POINT ROAD, DARIEN, CT 06820 | |
| Additional Defendant | Name: | | D-03 |
| | Address: | | |
| Additional Defendant | Name: | | D-04 |
| | Address: | | |

### Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons In a lawsuit. The complaint attached to these papers states the claims that each plaintiff Is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have Insurance that may cover the claim that is being made against you in this lawsuit, you should Immediately contact your Insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed *(Sign and "X" proper box)* | [x] Commissioner of the Superior Court [ ] Assistant Clerk | Name of Person Signing at Left | Date signed |
|---|---|---|---|
| | | BRUCE A. FOODMAN | 11/15/2012 |

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. | File Date |
| b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. | |
| c. The Clerk is not permitted to give any legal advice In connection with any lawsuit. | |
| d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions In the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date |
|---|---|---|
| | | 11/15/2012 |

| Name and address of person recognized to prosecute in the amount of $250 | | |
|---|---|---|
| LAURA SIMMONS, 112 PROSPECT STREET, STAMFORD, CT 06901 | | |

| Signed *(Official taking recognizance; "X" proper box)* | [x] Commissioner of the Superior Court [ ] Assistant Clerk | Date | Docket Number |
|---|---|---|---|
| | | | |

(Page 1 of 2)

RETURN DATE:        DECEMBER 18, 2012        : SUPERIOR COURT
                                             :
REVERE INVESTMENTS, LLC                      : J.D OF FAIRFIELD/BRIDGEPORT
                                             :
V.                                           : AT BRIDGEPORT
                                             :
CLARK BRINER, ET AL                          : NOVEMBER 15, 2012

## COMPLAINT

    1.      The Plaintiff, Revere Investments, LLC is a Connecticut limited liability company with a principal place of business at 20 Ketchum Street, Westport, Connecticut.

    2.      The Defendant, Clark Briner ("Briner") is an individual and a resident of the state of Connecticut.

    3.      The Defendant, Revere Capital, LLC is a Texas limited liability company with a principal place of business at 20 Ketchum Street, Westport, Connecticut.

    4.      On or around February 26, 2009, Plaintiff was formed. As of December 30, 2011, Roger Saunders of the Town of New Canaan, County of Fairfield, and State of Connecticut, owned fifty percent (50%) of Plaintiff and Defendant Briner's entity Defendant Revere Capital, LLC owned the remaining fifty percent (50%) of the Plaintiff.

    5.      The Plaintiff utilized an investment structure whereby, on a deal-by-deal basis, Plaintiff would pay investors a set interest rate and any profit earned above the investors' return is split equally (50/50) between Roger Saunders and Defendant Briner's entity Defendant Revere Capital, LLC. Pursuant to Plaintiff's Operating Agreement, Plaintiff, is to pay for all expenses related to the on-going business and revenue generation for the benefit of Plaintiff.

    6.      By agreement it was Roger Saunders principal obligation and duty to find investment opportunities for the benefit of Plaintiff, and by agreement it was the principal

obligation and duty of Defendant Briner to find investors and capital for the benefit of Plaintiff. Defendant Briner is the sole member and manager of Defendant Revere Capital, LLC and is 100% owner.  By agreement between Plaintiff and Defendant Briner any profits derived from the business and efforts of Defendant Revere Capital, LLC, shall be allocated to Plaintiff, and spilt equally (50/50) between Plaintiff and Defendant Briner and/or Revere Capital, LLC.

      7. Revere High Yield GP, LLC (hereinafter "Yield") is a Connecticut limited liability company entity owned equally by Roger Saunders (50%) and Defendant Briner (50%).  Yield is the governing entity for Revere High Yield Debt Fund, L.P.( the "Fund", a discretionary real estate debt fund. In or around May, 2011, Yield organized the Fund with the goal of co-mingling historical Plaintiff investors.  Like Revere Investments, by agreement, it was the principal duty and obligation of Roger Saunders to find investment opportunities and the principal duty of Defendant Briner to find capital. To the extent the fund originated the entire loan, investor money was raised on a co-investment basis and all the profit and expenses incurred in connection therewith were to be allocated to Plaintiff and accordingly split equally (50/50) between and Defendant Briner after expenses.  To the extent the fund did not originate the entire loan but Plaintiff and or Briner initiated investors outside the fund all profit was also to be split (50/50) to be paid to Plaintiff after expenses, split equally.

      8.    Proximate to the dates December 1, 2011 and October 22, 2012, the Defendants caused financial injury and misappropriated money rightfully belonging to Plaintiff for their own benefit. Specifically, Defendants engaged in the following conduct, including but not limited to:

          i.      In his scheme to convert, steal or otherwise defraud Plaintiff of money it was rightfully entitled to, Defendants Briner and Revere

- 2 -

Capital, LLC engaged in an on-going commingling and misallocation of expenses and incorrect financial reporting of Plaintiff , the Fund and RC Connecticut.  By way of example, and not limitation, Defendant Briner allocated or charged approximately $104,000.00 of expenses to Plaintiff, unrelated to the business purposes or operations of Plaintiff;

ii.     In his scheme to convert, steal or otherwise defraud Plaintiff of money it was rightfully entitled to, Defendant Briner allocated loan revenue to his personally owned entities Defendant Revere Capital, LLC and/or its duplicate shell RC Connecticut;

iii.    In his scheme to convert, steal or otherwise defraud Plaintiff of money it was rightfully entitled to, Defendants engaged in intentional incorrect and misleading application of accounting methodology;

iv.     In a scheme to convert, steal or otherwise defraud Plaintiff of money it was rightfully entitled to, Defendant Briner formed a mirror/duplicate entity with the identical name as Revere Capital, LLC, (RC Connecticut) for the purposes of diverting money, misleading those dealing with the company and to confuse and deceive Plaintiff as to financial obligations, fees, duties, accounting methodology, profits and finances;

v.      In his scheme to convert, steal or otherwise defraud Plaintiff of money it was rightfully entitled to, Defendants Briner and Revere

- 3 -

Capital, LLC have concealed and refused to disclose certain key documents in connection with an audit of the company commenced by Plaintiff;

vi.    In his scheme to convert, steal or otherwise defraud Plaintiff of money it was rightfully entitled to, Defendant Briner engaged in the unauthorized taking of profits generated from Plaintiff's investors.

vii.    In his scheme to convert, steal or otherwise defraud Plaintiff of money it was rightfully entitled to, the Defendants engaged in self-dealing, unauthorized manipulation, misallocation and diversion of Plaintiff's profit for the Defendants own benefit and that of his duplicate shell RC Connecticut.

viii.    In violation of the  agreements between Defendant Briner and Roger Saunders the Defendants engaged in the self-dealing, unauthorized manipulation, misallocation and diversion of Plaintiff's profit for their own benefit and that of Defendant Briner's personally owned duplicate shell RC Connecticut;

ix.    Defendants by way of deceptive practices, common schemes and artifices procured money from Plaintiff by means of false pretenses, fraud and misrepresentations.

x.    Defendant Briner has converted, failed and refused to turnover money and compensation belonging to Plaintiff;

xi.   Defendants by way of deceptive practices, common schemes and artifices including fraud, deceit and misrepresentation have engaged in improper self dealing damaging Plaintiff by entering into agreements without proper authority related and non-related entities and/or without appropriate documentation. By way of example, but not limitation, Defendant Briner entered into participation agreements with his personally owned companies Revere Capital, LLC and/or its duplicate shell RC Connecticut using Plaintiff capital for personal gain.  Defendant Briner diverted Fund due diligence revenue to his personal accounts and Defendant Briner originated unauthorized Fund loans in personal entities all to the detriment of the Plaintiff;

xii.   Defendant Briner hired a consultant to perform due diligence on the best and most appropriate mortgage servicing software for the Fund then improperly expensed the consultant's services through Plaintiff.

xiii.   Defendant Briner purchased the consultant's recommended mortgage servicing software for the Fund in Revere Capital, LLC and/or its duplicate shell RC Connecticut with the branding of the software in the Revere Capital's name to promote Briner's personally owned entities. Defendant Briner in act of self dealing leased the software back to Plaintiff with a payback period of approximately 3.5 years, after which time Defendant Revere Capital, LLC and/or its duplicate

shell RC Connecticut would break even in its lease and profit while owning 100% of the software;

xiv.    Defendants are diverting business opportunity away from Plaintiff damaging Plaintiff;

xv.    Defendant, Revere Capital, LLC has been placing all of the money from the ancillary loans into itself and/or its duplicate shell RC Connecticut but has taken all of the expenses into Plaintiff. This has included, but is not limited to, travel expenses of almost $9,000.00, food and beverage expenses of over $9,000.00. Expenses for Revere Capital's website of over $7,000.00, Revere Capital's office expenses of over $7,500.00. Defendant. Briner has further taken expenses of over $12,000.00, for capital placement agents out of Revere Investments and bookkeeping expenses of over $34,000.00, office expenses and servicing expenses.

xvi.    Defendant, Briner by way of deceptive practices, common schemes and artifices including fraud, deceit and misrepresentation has without consent, and in violation of agreements, Defendant. Briner has taken 100% of the profits generated from Defendant Revere Investments by placing the loans in Revere Capital, LLC and or its duplicate shell RC Connecticut and not giving Revere Investments its portion of the profits.

- 6 -

9.     The Defendants' conduct if it continues it will cause irreparable financial harm to the Plaintiff.

**COUNT I (Breach of Fiduciary Duty against Briner and Revere Capital, LLC)**

1.-9.     The Plaintiff repeats and realleges paragraphs 1-9, as if fully set forth herein.

10.     By virtue of the aforementioned conduct, Defendant Briner and Revere Capital, LLC breached their fiduciary duty owed to Plaintiff.

11.     As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff Saunders has suffered damages and Defendants Briner and RC Texas were unjustly enriched.

**COUNT II (Statutory Theft as to Briner and Revere Capital, LLC)**

1.-9..     The Plaintiff repeats and realleges paragraphs 1-9, as if fully set forth herein.

10.     Defendants Briner, intentionally, with calculation, design and with larcenous intent did deceive the Plaintiff wrongfully taking, obtaining and withholding Plaintiff Saunders money to convert the Plaintiff's money to their own use and permanently deprive Plaintiff of its money.

11.     The above described acts of the Defendant constitutes theft pursuant to Conn. Gen. Stat. Section 52-564.

12.     Pursuant to 52-564, Plaintiff is entitled to treble damages.

**COUNT III  (CONVERSION OF FUNDS)**

1.-9..     The Plaintiff repeats and realleges paragraphs 1-9, as if fully set forth herein.

10.     Defendant Briner, intentionally, with calculation, design and with larcenous intent did deceive the Plaintiff wrongfully taking, obtaining, exercising control

over and withholding Plaintiff's money to convert the Plaintiff's money to Defendant Briner's own use and permanently deprive Plaintiff of his money.

11.   Plaintiff is entitled to treble Damages as a result of the conversion.

### COUNT IV (VIOLATIONS OF CONNECTICUT UNFAIR TRADE PRACTICES ACT AGAINST REVERE CAPITAL, LLC)

1.-9..   The Plaintiff repeats and realleges paragraphs 1-9, as if fully set forth herein.

10.   The Defendants are "persons" engaged in "trade or commerce," as defined by Conn. Gen. Stat. Section 42-110a.

11.   The above-described acts of the Defendants constitute unfair and/or deceptive acts or practices in the conduct of a trade or business, in violation of Conn. Gen. Stat. Section 42-110a et seq.

12.   The Defendants' conduct amounted to unscrupulous conduct that violates the entrepreneurial and/or business aspects of business and of financial advisory professions.

**WHEREFORE**, the Plaintiff respectfully prays for relief and judgment as follows:

1.   Damages;

2.   Cost;

3.   Awarding the Plaintiffs costs and attorneys' fees under applicable law, including Conn. Gen. Stat. Section 42-110g(d) and Conn. Gen. Stat. Section 36b-29(a);

4.   Awarding the Plaintiffs punitive damages to the extent of the Plaintiffs' entitlement thereto under applicable laws, including pursuant to Conn. Gen. Stat. Section 42-110g(a);

5.   Awarding the Plaintiff treble damages as to Count II pursuant to Conn. Gen. Stat. Section 52-564;

6.    5.    Awarding the Plaintiff treble damages as to Count III pursuant to Conn.

Gen. Stat. Section 52-564; and

7.    Awarding the Plaintiff such other and further relief, both legal and equitable, as

the Court, in its discretion, may deem just and proper.

THE PLAINTIFF
REVERE INVESTMETNS, LLC

BY:
Bruce A. Foodman
Law Offices of Bruce A. Foodman
One Morningside Drive North, Bldg. A
Westport, CT 06880
Phone: 203-817-0858
Juris Number: 401211

STATE OF CONNECTICUT           :
                                            SS: Darien                    November 16, 2012

COUNTY OF FAIRFIELD           :

    Then and there by virtue hereof and by direction of the plaintiff's attorney, I left a true and attested copy of the within original Summons and Complaint, at the usual place of abode of the within named defendant, **Clark Briner, 167 Long Neck Road, Darien, Connecticut.**

And afterwards on November 16, 2012 I left a true and attested copy of the within original Summons and Complaint, at the usual place of abode of the within named defendant, **Revere Capital, LLC – C/O Clark Briner, 167 Long Neck Road, Darien, Connecticut.**

    The within and foregoing Summons and Complaint with my doings hereon endorsed.

Attest,

MICHAEL C. DELLI CARPINI
STATE MARSHAL
FAIRFIELD COUNTY

| | | |
|---|---|---|
| Travel | $ | - |
| Service | $ | 40.00 |
| Verified Pages | $ | 20.00 |
| Endorsements | $ | 1.60 |
| | | |
| Total | $ | 61.60 |

DOCKET NO.: FBT-CV-12-6031716-S

| | | |
|---|---|---|
| REVERE INVESTMENTS, LLC, | : | SUPERIOR COURT |
| | : | JUDICIAL DISTRICT OF |
| | : | FAIRFIELD/BRIDGEPORT |
| Plaintiff, | : | AT BRIDGEPORT |
| | : | |
| vs. | : | |
| | : | |
| CLARK BRINER, and REVERE CAPITAL, LLC | : | APRIL 30, 2013 |
| | : | |
| Defendants. | : | |

## ROGER L. SAUNDERS'S MOTION TO INTERVENE AS PLAINTIFF

Roger L. Saunders ("Mr. Saunders"), by his undersigned counsel, and pursuant to Conn. Gen. Stat. § 52-107 and Conn. Practice Book Section 9-18, moves for an order permitting Mr. Saunders to intervene in the above-captioned case and to file the Complaint in Intervention that accompanies this motion.  As more fully set forth in the supporting memorandum of law, Mr. Saunders seeks to bring derivative claims on behalf of Revere Investments, LLC ("Revere Investments"), as a fifty-percent owner/member.  Revere Investments may be unable to fully prosecute these claims against Defendants Clark Briner and Revere Capital, LLC ("Revere Capital"). Mr. Saunders, as a member, has interests, individually and derivatively, that will be adversely affected if he is not allowed to intervene as a party in this case.  Mr. Saunders's request to intervene is timely, and intervention by Mr. Saunders is appropriate.

Mr. Saunders's Memorandum of Law in Support of his Motion to Intervene is being filed contemporaneously with this motion.  A proposed Complaint in Intervention is attached to this motion.

107

WHEREFORE, Mr. Saunders moves to intervene in the above-captioned case and to file his Complaint in Intervention.

INTERVENING PLAINTIFF,
ROGER L. SAUNDERS

By: */s/ Joseph M. Pastore III* _____
    Joseph M. Pastore III
    Michael A. Zamat
    Stephen A. DeBernardis
    Pastore & Dailey, LLC
    Juris No. 433711
    4 High Ridge Park
    Stamford, CT 06905
    (203) 658-8455

    *His counsel*

## CERTIFICATION

I certify that on April 30, 2013, the foregoing was served via First Class U.S. Mail, postage prepaid, upon all counsel of record as follows:

> Bruce Alan Foodman
> One Morningside Drive N.
> Building A, Third Floor
> Westport, CT 06103
>
> David S. Hoopes, Esq.
> Mayo Crowe LLC
> 185 Asylum Street
> Hartford, CT 06103
>
> Stuart Michael Katz, Esq.
> Cohen & Wolf PC
> P.O. Box 1821
> Bridgeport, CT 06601
> skatz@cohenandwolf.com

*/s/ Joseph M. Pastore III*
Joseph M. Pastore III

DOCKET NO.: FBT-CV-12-6031716-S

| | | |
|---|---|---|
| REVERE INVESTMENTS, LLC, | : | SUPERIOR COURT |
| | : | JUDICIAL DISTRICT OF |
| | : | FAIRFIELD/BRIDGEPORT |
| Plaintiff, | : | AT BRIDGEPORT |
| | : | |
| vs. | : | |
| | : | |
| CLARK BRINER, and REVERE CAPITAL, LLC | : | APRIL 30, 2013 |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## ROGER L. SAUNDERS'S MOTION TO INTERVENE

Roger L. Saunders ("Mr. Saunders"), by his undersigned counsel, submits the following

memorandum and Affidavit ("Saunders Aff.") attached hereto as **Exhibit A**, in support of his

Motion to Intervene.

## BACKGROUND

Plaintiff Revere Investments, LLC ("Revere Investments") is a Connecticut limited

liability company, which is managed and owned fifty-percent by Mr. Saunders and fifty-percent

by Revere Capital, LLC (Texas) ("Revere Capital Texas"). Saunders Aff., ¶ 4. Revere Capital

Texas is entirely owned and operated by Defendant Clark Briner, ("Mr. Briner"). *Id.*, ¶ 8. Thus,

practically speaking, Mr. Briner operates as the other fifty-percent owner/member of Revere

Investments (unless otherwise noted, references to Mr. Briner shall also mean Revere Capital

Texas, by and through Mr. Briner). Pursuant to the Revere Investment's Operating Agreement,

Mr. Saunders and Mr. Briner would share equally in the profits and expenses of Revere Investments' ongoing business. Saunders Aff., ¶ 12.

Revere Investments' claims against Mr. Briner and Revere Capital Texas are those of serious misconduct including theft, conversion and breaches of fiduciary duties. *See* Complaint (Docket No: FBT-CV-12-6031716-S), and Proposed Complaint for Intervener, filed herewith. Such claims have serious potential consequences if prosecuted fully and properly.

Mr. Briner is not only a defendant in this action, but also he is essentially a plaintiff, being a fifty percent owner/member of Revere Investments. As such, Revere Investments on its own may be unable to adequately litigate and carry-out its claims against Defendants, as this would equate to Mr. Briner, in effect, having to prosecute himself. It is possible that the only way for Revere Investments to receive full and adequate relief is for its claims to be brought by means of a derivative suit brought by Mr. Saunders on behalf of Revere Investments.

## FACTUAL SUMMARY

Revere Investments was formed by in 2009. Saunders Aff., ¶ 5. Revere Investments would pay investors a set interest rate on the return of their investment, and any profits earned above the investors' return would be split evenly between Revere Investments' two member/managers. *Id.*, at ¶ 12. Additionally, Revere Investments would pay all related expenses for conducting the business and revenue generation for the benefit of the company. *Id.* Mr. Saunders and Mr. Briner agreed that Mr. Saunders' principal obligation and duty was finding investment opportunities for the benefit of Revere Investments, and the principal obligation and duty of Mr. Briner was to find investors and capital for the benefit of Revere

2

Investments. *Id.*, at ¶ 13. Profits derived from these efforts were to be divided equally between Mr. Saunders and Revere Capital Texas. *Id.*

In approximately May 2011, Revere GP established Revere High Yield Debt Fund, L.P. (the "Fund"). *See id.* at ¶ 14. The Fund is a discretionary real estate fund and a Delaware limited partnership, with Revere GP as the general partner and managing entity of the Fund. *Id.* The objective in establishing the Fund was to co-mingle historical and potential Revere Investments' investors, as well as investors generated by Mr. Briner. *Id.*, at ¶ 15. The Fund was to operate and be managed in a way similar to Revere Investments. *Id.*, at ¶ 16. Specifically, Mr. Saunders would primarily focus on investment opportunities for the benefit of the Fund, while Mr. Briner would primarily find capital for the benefit of the fund. *See id.* The Fund investors are limited partners of the Fund, and though not guaranteed, the Fund seeks to distribute a 10% current yield with a cumulative 13-15% annualized return on investors' contributed capital. *See id.*, at ¶ 17.

During the Summer of 2012, Mr. Saunders came to the realization that Mr. Briner was not acting in accordance with their agreements and that Mr. Briner was acting to the detriment of investors and contrary to the best interests of the business. *See id.*, at ¶ 21. In August 2012, Mr. Briner and Mr. Saunders agreed to an audit of Revere Investments by Horowitz & Ullmann, P.C., CPA's ("Horowitz Audit"). *See id.*, at ¶ 22. Although Mr. Briner agreed to cooperate with the audit, he only complied on a limited basis. *Id.* A copy of the Horowitz Audit report ("Horowitz Report") is attached to Mr. Saunders's Affidavit as **Exhibit 1**.

In general, the Horowitz Audit revealed that Mr. Briner underpaid Fund investors and Mr. Saunders on their investments due to erroneous or flawed accounting practices. *See id.* at ¶ 23. Additionally, Mr. Briner misallocated expenses to the detriment of Revere Investments. *See id.* Further, Mr. Briner underpaid Saunders by failing to share revenues in accordance with the partnership agreements. *See id.* Mr. Briner was also engaged in a pattern of self-dealing. *See id.*

With respect to revenues, Mr. Briner, as servicing agent, paid Fund investors and Mr. Saunders only on their net investment in loans rather than their gross investment. *See id.,* at ¶ 24. This resulted in approximately $50,000 to $105,000 in underpayments. *See id.* Mr. Briner misallocated interest on loan origination points, which resulted in a significant underpayment to Fund investors and Mr. Saunders. *See id.* An exact amount of loses could not be determined due to Mr. Briner's failure to produce all relevant documentation. *See id.* Mr. Briner also misallocated up to a 100% of certain loan revenue to his personally-owned entity, Revere Capital. *See id.* Further, Mr. Briner misappropriated 100% of certain profits generated from Revere Investments' investors through unauthorized use of the track records of Revere Investments and Mr. Saunders. *See id.* . Mr. Briner has arbitrarily decided how much profits he receives. *See id.* Mr. Briner has committed multiple accounting errors causing lost profits to Mr. Saunders. *See id.* Additionally, Mr. Briner has improperly withheld asset management fees due to Saunders. *See id.* Further, Briner, to the detriment of Fund investors and to the benefit of his own companies, Revere Capital Texas and Revere Capital Connecticut, has misallocated ancillary fees earned on Fund and Revere Investment investments. *See id.* Due to Mr. Briner's

refusal to cooperate fully with producing relevant documents, it is impossible to determine the extent of these improperly retained profits. *See id.*

The audit expressly revealed that Mr. Briner comingled and misallocated expenses of the Fund, Revere Capital Texas, Revere Capital Connecticut, and Revere Investments. *See id.* Mr. Briner improperly allocated a minimum of approximately $104,000 of expenses to Revere Investments that should have been allocated to and paid for by his own companies, Revere Capital Texas, Revere Capital Connecticut, and the Fund. *See id.* By way of example and not limitation, Mr. Briner:

    (a)  improperly allocated travel expenses to Revere Investments that were incurred for the benefit of Revere Capital Texas and Revere Capital Connecticut;

    (b)  improperly allocated food and beverage expenses that were not related to Revere Investments;

    (c)  allocated Revere Capital Texas's and Revere Capital Connecticut's marketing, website, accounting and office expenses to Revere Investments; and

    (d)  improperly allocated the Fund's and Revere Capital Texas', and Revere Capital Connecticut's administrative expenses and employee salaries and expenses to Revere Investments.

    *See id.*

The comingling and misallocation of these expenses caused damages to Revere Investments and Mr. Saunders. *See id.*, at ¶ 25. It also caused the net profits of the Fund to be artificially inflated, which is misleading potential investors. *See id.* Mr. Briner's misallocations

and erroneous accounting has resulted to damages to the Fund, its investors, and Mr. Saunders as a member of Revere GP and Revere Investments.

Mr. Briner has created Revere High Yield Fund, LP ("Fund II") and in his marketing for the Fund II has improperly used the track records of historical performance of Revere Investments, the Fund, and Mr. Saunders, by representing those track records as his own to both his potential investors and my current investors. *Id.*, at ¶ 33. This improper use of Mr. Saunders's and Revere Investments' track records has damaged Revere Investments and Mr. Saunders while solely benefiting Mr. Briner personal entities.

Mr. Briner's wife Kristin Briner's company, Madison Mott, Inc. ("Madison"), has provided, and continues to provide products and services to Revere Capital while charging Revere Investments for those products and services. These services include, but are not limited to web, email, and/or data hosting, maintenance of a DropBox account, business supplies and various marketing materials. *Id.*, at ¶ 34. Mr. Briner and Madison did defraud Mr. Saunders and Revere Investments of money to which they were rightfully entitled. Mr. Briner hired Madison, a marketing company, numerous times whereby his wife Kristine Briner, would perform services exclusively for Revere Capital Texas or Revere Capital Connecticut. *See id.*, at ¶ 36. Despite knowing that no work was ever done by Madison for Revere Investments, the invoices were submitted to Revere Investments, and Madison was paid by and accepted payment from Revere Investments, thereby increasing the expenses of Revere Investments and diminishing its profits. *Id.*

## ARGUMENT

Intervention will allow Mr. Saunders to protect his interests affected by the action, as well as afford the parties a full resolution that would otherwise be impossible without intervention.   Conn. Gen. Stat. § 52-107 provides:

> The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party.

Using substantially identical language, the Conn. Practice Book Section 9-18 allows for the same.[1]

Connecticut rules of practice do not explicitly enumerate the factors a court considers in deciding whether to allow intervention, but have adopted the factors enumerated in Rule 24 of the Federal Rules of Civil Procedure. *See Horton v. Meskill,* 187 Conn. 187, 197 (1982); *see also Rosado v. Bridgeport Roman Catholic Diocesan Corp.,* 276 Conn. 168, 225-226 (2005) *rev'd on other grounds* 292 Conn. 1 (2009).

---

[1] Practice Book Sec. 9-18: "The judicial authority may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the judicial authority may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the judicial authority, on its motion, shall direct that person to be made a party. (See General Statutes § 52-107 and annotations.)"

I.     **Mr. Saunders may intervene as of right**

Analyzing claims under Rule 24 of the Federal Rules of Civil Procedure, courts have found that in order for a party to be allowed to intervene as of right, they must show: "[the motion is] timely, the movant [has] a direct and substantial interest in the subject matter of the litigation, the movant's interest [is] impaired by disposition of the litigation without the movant's involvement and the movant's interest [is not] represented adequately by any party to the litigation." *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 140 (2000), *citing Washington Trust Co. v. Smith*, 42 Conn. App. 330, 336-37, 680 A.2d 988 (1996) *rev'd on other grounds*, 241 Conn. 734, 699 A.2d 73 (1997).

Because Mr. Saunders's motion is timely, and he has a direct and substantial interest, which is not adequately represented by any other party to the litigation, Mr. Saunders meets the standard for intervention as of right.

First, Mr. Saunders's motion is timely.   Under Fed. R. Civ. P. 24, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Connecticut courts have included this factor in their determination of intervention both by right and permissively, and held:

> a timely request for intervention involves a determination of how long the intervenor was aware of an interest before he or she tried to intervene, any prejudicial effect of intervention on the existing parties, any prejudicial effect of a denial on the applicant and consideration of any unusual circumstances either for or against timeliness.

*Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 146-147 (2000),

*citing Edwards v. Houston*, 78 F.3d 983, 1000 (5th Cir. 1996). Given that this action was filed

only a few months ago, and no substantial progress has been made in the case, no party would be

unduly prejudice or delayed. However, Mr. Saunders's interests risk being greatly impaired if

intervention is denied. Thus the factors weigh in favor of finding Mr. Saunders's motion timely.

Mr. Saunders has a direct and substantial interest as the fifty percent member and owner

of Revere Investments. Saunders Aff., ¶ 3. He has born the losses asserted by Revere

Investments and is entitled to the recovery Revere Investments seeks. Id., at ¶¶ 25, 29.

Mr. Briner knowingly made fraudulent misrepresentations and omissions of material

facts to Revere Investments, Fund investors and Mr. Saunders regarding the handling, allocation

and appropriation of clients, investors, financial matters, expenses and profits, with the intent

that Revere Investments, Fund investors and Mr. Saunders rely upon them. Revere Investments

and Mr. Saunders reasonably relied upon such representations and omissions of material fact to

its detriment, and as such has suffered damages as a result, which damages have been born solely

my Mr. Saunders.

Mr. Saunders and Revere Capital Texas are parties to Revere Investments' Operating

Agreement dated February 26, 2009. *Id.*, at ¶ 4. Mr. Saunders, a member of Revere

Investments, has fully performed his obligations pursuant to the applicable Operating Agreement

of Revere Investments. *Id.*, at ¶ 21. Mr. Briner's refusal and failure to fulfill his obligations

pursuant to the applicable Operating Agreements and other agreements with Mr. Saunders as to

9

Revere Investments is a breach of those agreements that has resulted in damages to Revere Investments, sustained solely by Mr. Saunders.

Mr. Saunders and Revere Investments have further sustained damages due to Mr. Briner's fraudulent actions, conversion, statutory theft, and violations of the Connecticut Unfair Trade Practices Act and the Lanham, all of which are more fully explained in the attached Proposed Complaint in Intervention.

Although Mr. Saunders seeks to assert claims on behalf of Revere Investments, these rights are not adequately represented without Mr. Saunders's intervention. "[A] presumption of inadequacy arises when an absentee must rely on his opponent or one whose interests are adverse to his." *Episcopal Church in the Diocese of Conn. v. Gauss*, 302 Conn. 386, 399-400 (Conn. 2011) (internal quotations and citations omitted). Such a presumption of inadequacy is present here where Mr. Briner represents half of the Plaintiff while also being a named defendant. Thus, Mr. Saunders's interests are impaired without his intervention.

**II.     Mr. Saunders should be permitted to intervene**

Under a more discretionary standard, a party may be permitted to intervene after the court balances several factors "including: the timeliness of the intervention, the proposed intervenor's interest in the controversy, the adequacy of representation of such interests by other parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in resolving the controversy before the court." *Kerrigan v. Comm'r of Pub. Health*, 279 Conn. 447, 457-458 (Conn. 2006) (internal quotations

omitted) *citing Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 226, (2005) *rev'd on other grounds* 292 Conn. 1 (2009).

Should the Court find any element of Mr. Saunders's intervention as of right is lacking, the Court should still permit Mr. Saunders's intervention under the more discretionary standard of permissive intervention. For all of the aforementioned reasons, Mr. Saunders has substantial interests in the litigation which are not adequately being represented by Revere Investments, due to Mr. Briner's duel role as plaintiff and defendant. As such adequate and just resolution of the case requires Mr. Saunders's intervention.

## CONCLUSION

Due to Mr. Briner's and Revere Capital's positions as both Defendants and owner/member of Revere Investments, the Plaintiff, Revere Investments may not be able to fully prosecute these claims against Defendants. Mr. Saunders, as a member, has interests that will be adversely affected if it is not allowed to intervene as a party in this case. The parties' interests cannot be afforded complete relief unless Mr. Saunders is allowed to intervene. Mr. Saunders's request to intervene is timely, and intervention by Mr. Saunders is appropriate pursuant to Conn. Gen. Stat. § 52-107 and Conn. Practice Book Section 9-18.

11

INTERVENING PLAINTIFF,
ROGER L. SAUNDERS


By: _/s/ Joseph M. Pastore III_ _____
Joseph M. Pastore III
Michael A. Zamat
Stephen A. DeBernardis
Pastore & Dailey, LLC
Juris No. 433711
4 High Ridge Park
Stamford, CT 06905
(203) 658-8455


*His counsel*

12

## CERTIFICATION

I certify that on April 30, 2013, the foregoing was served via First Class U.S. Mail, postage prepaid, upon all counsel of record as follows:

Bruce Alan Foodman
One Morningside Drive N.
Building A, Third Floor
Westport, CT 06103

David S. Hoopes, Esq.
Mayo Crowe LLC
185 Asylum Street
Hartford, CT 06103

Stuart Michael Katz, Esq.
Cohen & Wolf PC
P.O. Box 1821
Bridgeport, CT 06601
skatz@cohenandwolf.com

*/s/ Joseph M. Pastore III*
Joseph M. Pastore III

# EXHIBIT A

DOCKET NO.: FBT-CV-12-6031716-S

| | | |
|---|---|---|
| REVERE INVESTMENTS, LLC, | : | SUPERIOR COURT |
| | : | JUDICIAL DISTRICT OF |
| | : | FAIRFIELD/BRIDGEPORT |
| Plaintiff, | : | AT BRIDGEPORT |
| | : | |
| vs. | : | |
| | : | |
| CLARK BRINER, and REVERE CAPITAL, LLC | : | APRIL 2 6 2013 |
| | : | |
| Defendants. | : | |
| | : | |

## AFFIDAVIT OF ROGER L. SAUNDERS IN SUPPORT OF
## PLAINTIFFS' MOTION TO INTERVENE

I, ROGER L. SAUNDERS, under oath, state and declare as follows:

1.      I knowingly submit this affidavit in support of my Motion to Intervene and the Memorandum of Law in support thereof.

2.      I am a resident of the State of Connecticut.

3.      I am a 50% manager/member of Revere Investments, LLC ("Revere Investments") and a 50% owner of Revere High Yield GP ("Revere GP").

4.      Revere Investments is a Connecticut limited liability company, which is managed and owned fifty-percent by myself and fifty-percent by Revere Capital, LLC (Texas); both myself and by Revere Capital, LLC (Texas) are parties to Revere Investments' Operating Agreement dated February 26, 2009.

5.     Revere Investments was established on or around February 26, 2009, and I became a 50% member/manager as of February 2012, the other 50% interest belongs to Revere Capital LLC Texas, through Clark Briner ("Mr. Briner").

6.     Mr. Briner is an individual and a resident of the state of Connecticut.

7.     Mr. Briner is the 100% owner of the entities Revere Capital, LLC, Texas and Revere Capital, LLC, Connecticut (collectively referred to as "Revere Capital"); Mr. Briner is 50% owner of Revere GP.

8.     Revere Capital Texas is a Texas limited liability company, and 50% member/manager of Revere Investments.  It is owned entirely by Mr. Briner.

9.     Revere Capital LLC Connecticut is a Connecticut limited liability company, and is also owned entirely by Mr. Briner.

10.    Revere GP is a Connecticut limited liability company, owned 50% by myself and 50% by Mr. Briner.

11.    Revere Investments operates on a deal-by-deal basis of high yield and hard money first and second mortgage lending.

12.    Revere Investments, pursuant to its Operating Agreement, would pay investors a set interest rate on the return of their investment, and any profits earned above the investors' return would be split evenly between Revere Investments' two member/managers (myself and Mr. Briner).  Additionally, Revere Investments would pay all related expenses for conducting the business and revenue generation for the benefit of the company.

2

13.     Mr. Briner and I agreed that my principal obligation and duty was finding investment opportunities for the benefit of Revere Investments, and the principal obligation and duty of Mr. Briner (d/b/a Revere Capital) was to find investors and capital for the benefit of Revere Investments.  Profits derived from these efforts were to be divided equally between myself and Mr. Briner/Revere Capital.

14.     In or around May 2011, Revere GP established Revere High Yield Debt Fund, L.P. (the "Fund").  The Fund is a discretionary real estate fund and a Delaware limited partnership, with Revere GP as the general partner and managing entity of the Fund.

15.     The objective in establishing the Fund was to co-mingle historical and potential Revere Investments' investors, as well as investors generated by Mr. Briner.  All investors in the Fund are true third party investors.

16.     The Fund was to operate and be managed in a way similar to Revere Investments: I would primarily focus on investment opportunities for the benefit of the Fund, while Mr. Briner would primarily find capital for the benefit of the Fund.

17.     Investors of the Fund are limited partners of the Fund, and though not guaranteed, the Fund seeks to distribute a 10% current yield with a cumulative 13-15% annualized return on investors' contributed capital, namely by way of loans.

18.     According to the Fund's Private Placement Manual ("PPM"), loan origination points are to be specially allocated to investors/partners based on their pro rata contributions to the Fund at the time the loan is funded to the borrower.

3

19.     The Fund has specific diversification requirements that effect whether the Fund is able to originate the entire amount of a loan.

20.     If necessary, due to diversification requirements of the Fund, investor money would be raised on a co-investment basis (similar to Revere Investments) and all profits and/or expenses associated with this are to be allocated to Revere Investments and divided equally between Mr. Briner and myself.

21.     In or around July 2012, I realized that Mr. Briner was not acting in accordance with the Operating Agreement or the Fund's PPM, and he was acting to the detriment of investors and contrary to the best interests of the Revere Investments and the Fund.  At all times I have fully performed my obligations under the Operating Agreement.

22.     In or around August 2012, Mr. Briner and I agreed to an audit of Revere Investments.  This audit was conducted by Horowitz & Ullmann, P.C., CPA's ("Horowitz Audit").  However, although Mr. Briner agreed to cooperate with the audit, to my knowledge, he only did so on a limited basis.

23.     To my knowledge and understanding, the Horowitz Audit found that Mr. Briner engaged in the following course of conduct: underpaid Fund investors on their investments due to erroneous accounting practices; underpaid myself; misallocated expenses to the detriment of Revere Investments; failed to share revenues in accordance with the partnership agreements; and engaged in self-dealing.  (a true and correct copy of the Horowitz Audit is attached as **Exhibit 1** to the Saunders Affidavit.))

24.    The Horowitz Audit was a limited preliminary assessment, and I understand that the books and records of Revere Investments are being further examined, however I have read the Horowitz Audit and my knowledge and understanding of the Horowitz Audit is that it found Mr. Briner to have engaged in the following course of conduct:

a.    paid Fund investors only on their net investment in loans rather than their gross investment, which is contrary to the PPM. This has resulted in approximately $50,000 to $70,000 in underpayments. (Horowitz Audit, at 2.) This number was later found to be underestimated in the Horowitz Audit.

b.    misallocated loan origination points as well as the interest on those points, which resulted in a significant underpayment to Fund investors and my investments. An exact amount of loses could not be determined due to Briner's failure to produce all relevant documentation. (*Id.*, at 3.)

c.    misallocated up to a 100% of certain loan revenue to his personally-owned entity, Revere Capital. (*Id.*, at 3.)

d.    took 100% of certain profits generated from Revere Investment's investors through improperly and without permission, utilizing Revere Investment's and my track record. (*Id.*, at 5.)

e.    arbitrarily decided how much profit he receives, while passing all expenses through to Revere Investment. Due to Briner's refusal to cooperate fully with producing relevant documents, it is impossible to determine the extent of these improperly retained profits. (*Id.*, at 5.)

5

f.  engaged in improper self-dealing to the benefit of his solely-owned company,

Revere Capital, and to my detriment and to the detriment of the Fund and

Revere Investment. (*Id.*, at 5.)

g.  committed multiple accounting errors causing lost profits to me personally.

(*Id.*, at 5.)

h.  improperly withheld the asset management fees due to me.  (*Id.*, at 6.)

i.  Briner, to the detriment of Fund investors and to the benefit of his own

company, Revere Capital, has misallocated ancillary fees earned on Fund

investments.  (*Id.*, at 6.)

j.  Briner misallocated profits belonging to Revere Investments for his own

benefit.  The profits were later returned, however those profits were unable to

be traced, and as such, the Horowitz Audit determined that the profits were

likely improperly deposited into Briner's personal or company accounts.  (*Id.*,

at 7.)

k.  Briner comingled and misallocated expenses of Revere Capital and Revere

Investments.  (*Id.*, at Section V.)

l.  improperly allocated approximately $104,000 of expenses to Revere

Investments that should have been allocated to and paid for by his own

company, Revere Capital, and the Fund.  By way of example and not

limitation, Mr. Briner:

6

      i.  improperly allocated travel expenses to Revere Investments that were incurred for the benefit of Revere Capital;

     ii.  improperly allocated food and beverage expenses that were not related to Revere Investments;

    iii.  allocated Revere Capital's marketing, website, and office expenses to Revere Investments; and

    iv.  improperly allocated the Fund's and Revere Capital's administrative expenses and employee salaries and expenses to Revere Investments.

        (*Id.*, at 7).

25.    The comingling and misallocation of these expenses caused damages to Revere Investments, and myself; it also caused the net profits of the Fund to be artificially inflated, which is misleading potential investors. (*See* Horowitz Audit, at 7.)

26.    Mr. Briner has been subsidizing his wholly-owned company by stealing profits from a jointly owned company. (*Id.*)

27.    Mr. Briner engaged in self-dealing by entering into numerous agreements with related and non-related entities, without consulting me; these agreements were detrimental to Revere Investments and the Fund but beneficial to Mr. Briner's company, Revere Capital. (*Id.*, at 9.)

28.    Upon information and belief, the amount of ill-gotten gains Mr. Briner potentially received from this self-dealing may be in the millions of dollars, but without further discovery it is impossible at this time to know the amount.

29.     Mr. Briner's misallocations and erroneous accounting have resulted in damages to the Fund, its investors, and myself as a member of Revere GP and Revere Investments. (*Id.*)

30.     Mr. Briner's actions have caused the Fund to prematurely begin runoff and not transact any new business, causing an estimated $2,000,000 in lost profits over the next five years.

31.     On or about November 15, 2012, I instituted an action against Mr. Briner, and upon commencement of the lawsuit, Mr. Briner returned $200,000 to the Fund, stating it was to remedy "accounting errors." However, Mr. Briner provided no accounting foundation for how this amount was determined. An accountant for the company has noted this and other irregularities.

32.     Mr. Briner has yet to remedy the same "accounting errors" related to my investments

33.     Mr. Briner has created Revere High Yield Fund, LP ("Fund II") and in his marketing for the Fund II has improperly used the track records of historical performance of Revere Investments, the Fund, and myself, by representing those track records as his own to both his potential investors and my current investors.

34.     Madison Mott, Inc. has provided, and continues to provide products and services to Revere Capital while charging Revere Investments for those products and services. These services include, but are not limited to web, email and/or data hosting, maintenance of a DropBox account, business supplies and marketing materials.

35.     Mr. Briner, is married Kristen Briner, a manager of Madison Mott, as such it can be inferred that this improper conduct was intentionally done to benefit Revere Capital.

36.     Mr. Briner hired Madison Mott, a marketing company, numerous times whereby his wife Kristine Briner, would perform services exclusively for Revere Capital Texas or Revere Capital Connecticut. Despite knowing that no work was ever done by Madison Mott for Revere Investments, the invoices were submitted to Revere Investments, and Madison Mott was paid by and accepted payment from Revere Investments, thereby increasing the expenses of Revere Investments and diminishing its profits.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: April 2 6 2013
        Stamford, CT


_____
ROGER L. SAUNDERS

Sworn to before me this
2 6  day of April, 2013

~~Notary~~/Commissioner of the Superior Court     (Juris # 431365)

My Commission expires:
(Notary seal/stamp)

9

# EXHIBIT 1

# HOROWITZ & ULLMANN, P.C.
### Certified Public Accountants

A member of the
AICPA Center for Audit Quality
New York State Society of CPAs
PCAOB registered

275 Madison Avenue
New York, NY 10016
Telephone: (212) 532-3736
Facsimile: (212) 545-8997
E-mail: cpas@horowitz-ullmann.com

October 18, 2012

Edward N Lerner,
Representing Roger L. Saunders
Lerner & Guarino, LLC
One Morningside Drive North
Building A
Westport CT 06880

## RE: SUMMARY OF ACCOUNTANT'S REVIEW OF BOOKS AND RECORDS OF REVERE INVESTMENTS, LLC

### A. BACKGROUND

The following report details the findings from our review of the books and records of Revere Investments, LLC for the period beginning December 1, 2011 through the present date.

Within this report the following terms are applicable:
1. The initials "RI" refers to Revere Investments, LLC
2. The terms "Fund" and "the Fund" refer to Revere High Yield Debt Fund, LP, a related entity.
3. The terms "RC" and "Capital" refer to Revere Capital, LLC, a 50% partner in RI and a 100% wholly-owned entity of Clark Briner, the "servicing agent".

### B. FINDINGS

The following items highlight the key findings during our review of the books and records of RI and during production and evolution of this report.
More details can be found in the remainder of the report.

- Investors of the Fund have been underpaid on their investments through erroneous accounting practices caused by what appears to be either negligent accounting or intentional deception.
- An on-going commingling and/or misallocation of expenses which have led to incorrect financial reporting for both the Fund and RI.
- During the period of our review it appears Mr. Briner has allocated and/or charged approximately $104,000 of expenses to RI, almost all of which was unrelated to the business purposes or operations of RI.
- Revenues have not been shared according to the partnership agreements. In some instances Mr. Briner has made his own rules of how profits should be split or taken 100% of the profit altogether.

- The servicing agent has withheld our client's respective share of duly owed Asset Management fees for approximately one year.
- Mr. Briner's actions and decisions have led us to believe that he is not acting in the best interests of the partnership. Rather that he is focused on his own best interests.
- Our findings indicate that through various methods, Mr. Briner has misdirected revenues from the Fund and Revere Investments and misallocated expenses related to the Fund and RI in the sum of approximately:
  - $300,000 in potential RI profits taken into Revere Capital
  - $50,000 - 70,000 in realized underpayments to Fund investors
  - $115,000 in gross potential underpayment of interest earned on points to Fund investors
  - $104,000 of misallocated expenses
  - $10,000 in potential underpayment of points interest to Roger Saunders, personally
  - $2,000+ in bridge loan errors to Roger Saunders, personally
  - $800 - 1,000 in tax preparation fees


## C. CONCLUSIONS

The following items highlight the key conclusions that resulted from our review of the books and records of RI and during creation of this report. Additional details can be found in the remainder of the report.

- It appears Mr. Briner has been negligent with respect to the accounting and management of the Fund and RI.
- The diverting of expenses from the Fund and Revere Capital to Revere Investments appears to have been done for the purpose of deceiving potential investors and to pass through some of Mr. Briner's own personal expenses to an entity in which he shares 50% of the profits. Thereby transferring the cost to his partner.
- Mr. Briner's actions show that he has mismanaged the Fund and taken advantage of his management position within RI. The information we have found points in the direction that he is not acting in the best interest of either of these entities, but rather to suit his own personal interests and investments.
- Considering the above information, we recommend the removal of Mr. Briner as servicing agent and that a new system of operations management be put in place.
- We recommend that a further analysis of Mr. Briner's accounting for Bridge Loans should be performed in order to quantify the extent of underpayment of interest.
- We recommend that a comprehensive inception-to-date review of all entities be undertaken in order to understand how far back these bad practices go and to ascertain an exact amount that ultimately needs to be reimbursed by Mr. Briner to Fund investors, Revere Investments and Roger Saunders.


## D. DETAILED FINDINGS

### I. Accounting for Revere High Yield Debt Fund, LP:

After a review of the records for the Fund it is our opinion that there are two main areas where there have been deficiencies in general accounting practices. First, the investors of the Fund have been and are currently being underpaid on their investments. From our review of the calculations it became apparent that the servicing agent accomplished this underpayment by paying Fund investors current only on their net investment in loans and not on their gross investment (the difference between net and gross is the points allocated up front, which should be done on a *pari passu* basis) resulting in approximately $50,000 to $70,000 in underpayments on Fund investors'

capital, across certain loans. More investigation and review of the servicing agent's calculations and payments would be required to know the exact amount of underpayment. We will highlight an example of this in the following section. Secondly, because the fees that are paid on points on Fund investments have been considered separate, we have observed examples of underpayments to Fund investors on ancillary fees and revenues earned. This will be highlighted in the Houston Land loan example later on.

## II. Loan Origination Points

According to the Revere High Yield Debt Fund's Private Placement Memorandum ("PPM"), p.45:
*Loan Origination Points ("Points") earned by the Partnership shall be specially allocated for tax purposes to those Partners who have funded their equity contributions into the Partnership on the day that the loan is funded to the borrower. This allocation to the Partners shall occur at such time as the Points are recognizable into taxable income of the Partnership for tax purposes.*

On a number of Fund investments it appears that the servicing agent, Clark Briner, has been misallocating interest earned on up-front points causing a significant underpayment to the Fund investors. Additionally, we discovered one investment deal where Mr. Briner allocated 100% of a specific loan's (see below "Uptown Alley") revenue to his personally-owned entity, Revere Capital. This was the transaction in which our client originally discovered the incorrect allocations of the Fund. After analyzing the accounting for this loan it appears Mr. Briner is not allocating earnings correctly to the investors.

We estimate that if this incorrect application of accounting methodology were to be used consistently on all fund loans, based on the normal life of each of the loans, it would amount to $115,000 in potential lost profits to Fund investors; however, this incorrect accounting has been utilized only on specific deals. This appears to be an intentional incorrect application of rules, at Mr. Briner's discretion. Due to the lack of documentation and insufficient information provided by Mr. Briner to our client, we could only use our best estimates and assumptions in order to estimate what the potential losses could be. The fact that Mr. Briner is not providing complete information with his partner suggests/points in the direction of bad-faith and/or potential wrong-doing.

**Illustrative example (Uptown Alley Loan):** In order to conclude $525,000, Revere Capital originally funded $500,000 and capitalized its remaining 5% points into this loan. Revere Capital is being paid current 14% on the total $525,000; however, the Fund is being paid 14% on its *actual* contribution of $1,200,000 and not on its gross contribution of $1,275,000 (which includes the points it net-funded since the Fund gets a *pari passu/pro-rata* ownership interest in the loan) and is therefore being underpaid $875 per month or $10,500 year-to-date (as of Sept 2012). We have not been able to review all of the loans in detail, but we have observed approximately ten different examples where the servicing agent has applied incorrect accounting with respect to the calculation of the fees paid to investors.

In addition to the Uptown Alley loan, other examples observed (and the $ spread on which the incorrect interest calculation is being applied) are: Dallas ($112,000 spread), Golden Eagle ($85,000), Maine ($48,000), Boca ($30,000), Houston ($39,000), Family Dollar ($33,000), Great Harbor ($25,000), 48 Washington ($17,100), and Kings Point ($2,000).

*Below is a breakdown of the Uptown Alley loan:*

| Lender | Lender Name | Pct Owned | Lender Rate | Principal Balance |
|---|---|---|---|---|
| **HYFUND** | Revere High Yield Fund | 60.000% | 14.000% | $1,200,000.00 |
| **Revere Capital** | Revere Capital, LLC | 26.250% | 14.000% | $525,000.00 |
| **RI-POINTS** | Revere Investments - POINTS | 3.750% | 14.000% | $75,000.00 |

*Note: The $75,000 in points Mr. Briner allocated to Revere Investments belongs to Fund investors who are not currently receiving their share of interest on this portion.*

Additionally, Revere Capital initially incorrectly received 100% of the interest earned from the Fund's $75,000 in points. It took 5 months from the time our client directly notified Mr. Briner until he addressed the error. The identification of this error led to our client's realization of the on-going misallocation that has been occurring on many Fund loans.

*Illustrative Example of the Family Dollar loan:*



In this example you can see how the monthly payments which are being made to the HY Fund are incorrectly calculated based on the equity contribution ($521,700 @ 14% (divided by 12 months) = $6,086.50) versus the monthly amount which is being received from the borrowers ($555,000 @ 14% (divided by 12 months) = $6,475.00) which is based on the gross amount of the loan.

From the information that we have been able to gather, it appears that Mr. Briner's rationale behind what he is doing regarding the loan origination points and interest issue is that he is deliberately switching the points received on loans from "up-front" points to "exit" points and then taking the incremental interest earned on those points from loan origination to loan payoff as a profit, even though the points were taken up front. The amounts are small enough not to be noticed, however our client confirms that this methodology was never discussed nor agreed to and obviously done without permission. After subsequently looking into some of his own personal deals with Mr. Briner, our client recently discovered that Mr. Briner has been applying this similar erroneous accounting with some of our client's personal investments (our client estimates that the totals amount to approximately $10,000 of unauthorized gains).

Our client maintains that there is no precedent for this type of accounting and from an accounting perspective it does not make any logical sense that our client would agree to anything like this given that both the Fund investors and our client's own investments are entitled to an equal *pari passu/pro-rata* ownership interest.

### III. Other Revenue: *(South Carolina Loan, Dallas Office, Houston Land, Uptown Alley, Great Harbor)*

Without permission and against partnership agreements, Mr. Briner has taken 100% of certain profits generated from Revere Investments' investors through the utilization of Revere Investments and Saunders' track record/experience/revenue/sourcing and continues to make arbitrary decisions on how much profit he receives. Since he maintains full control, and refuses to share any financial information with our client, of Revere Capital, the entity utilized to divert Revere Investments profit, our client does not know the full extent of the revenue generation that he is actually doing or how he is splitting the profits and expenses. It is obvious though, that he is passing the expenses related to certain sole business activities to RI while keeping almost all of the profit generated from those activities. Without access to Revere Capital's accounting records it is not possible to tell the extent of deals and profits which are possibly being retained by Mr. Briner at the expense of Revere Investments. It is only when our client has questioned him about certain transactions and transfers to Revere Capital that he has provided them with limited details about what he is doing. In working with our client, it is our best estimation that the potential profit earned from Mr. Briner's self-dealing of investments could be as much as $300,000 or more.

| Identified Revere Capital potential revenue claw-back | | | |
|---|---|---|---|
| Loan Name | RI Investors | Assumed Profit % | Potential Profit |
| SC Loan | $2,500,000.00 | 6% | $150,000.00 |
| Dallas Office | $208,000.00 | 4% | $8,320.00 |
| Houston Land | $1,117,500.00 | 7% | $78,225.00 |
| Uptown Alley | $525,000.00 | 6% | $31,500.00 |
| Great Harbor | $65,000.00 | 6% | $3,900.00 |
| | | Total | $271,945.00 |

*Bridge Loan accounting errors:*

Throughout the course of the business, our client Roger Saunders has been providing bridge money on deals to help facilitate loan closings. Mr. Saunders would earn 100% of the stated interest rate for the duration that the bridge money was outstanding. After a review of bridge loan payments made by Clark Briner, it has come to our attention that there have been multiple accounting errors which have been punitive to Mr. Saunders. There appears to be over $2,000 of unrealized profit that is due to Mr. Saunders as Mr. Briner has used dates earlier

than the actual dates on which checks were mailed in order to calculate the interest. Moreover, there are multiple bridge loans that have been repaid with no record of interest paid leading us to conclude that there may be much more money owed for bridge loan services performed.

*Asset Management Fee:*
On or about August 25th, 2011, Mr. Briner requested from our client that the Asset Management fee be re-allocated from a 50/50 split between the partners to an 85%(Briner) /15% (Saunders) split due to his focus on the back-office operations and day-to-day responsibilities. Our client agreed to allocate him an incremental 35% of the AM fee and he has since taken 85% (cumulatively around $207,000 as of Sept 2012) of the Asset Management fee to compensate him for his efforts; however, while taking his personal 85% share, he has denied our client of their 15% (cumulatively around $37,000 as of Sept 2012) of the AM fee.


## IV. Misallocation of Ancillary Fees Earned on Fund Investments

**Illustrative example (Houston Land loan):** Due to Mr. Briner allocating Fund points to Revere Investments and not to the Fund's investors, the proportion of ancillary fees earned have been under calculated and in certain instances have resulted in other entities earning a disproportionate share.

| Houston Loan Example | | | | |
|---|---|---|---|---|
| | Original Contributions | Correct Contributions | Correct % ownership | *Difference* |
| Revere Capital | 1,250,000.00 | 1,249,000.00 | 50.52% | |
| Fund | 1,223,500.00 | 1,223,500.00 | 49.48% | |
| Total Fund | 2,473,500.00 | 2,472,500.00 | 100.00% | *$1,000.00* |
| | Original Allocation | % Breakdown | Correct Allocation | *Difference* |
| Fee example | | | | |
| Revere Capital | $25,245.10 | 50.52% | $25,257.84 | $12.74 |
| Fund | $23,990.20 | 49.48% | $24,742.16 | $751.96 |
| Total | $49,235.30 | 100.00% | $50,000.00 | $764.70 |

In the example above, the misallocation of points has led to a minimum of $1,500 (there have been at least two $50,000 fee payments paid on this loan) in incorrect fees allocated to other entities, to the detriment of the Fund. We have not reviewed 100% of the loans, but our client suspects that this improper application of accounting may have also occurred on additional loans, to the detriment of Fund investors.

*Note: While this specific error does not amount to a significant sum, the erroneous accounting practices being utilized by Mr. Briner directly impacts Fund investors and, Mr. Briner, as servicing agent, continues to operate under these incorrect assumptions, continuing in more situations which will be detrimental to Fund investors.*

One other situation of note related to the Houston Land loan is that we have seen documentation of Mr. Briner using profits which belong to Revere Investments apparently in order to bridge investors that he is trying to count as his own. In the process, he has misallocated 100% of the profit earned from those investors. The Houston loan closed on March 13, 2012 however, he did not repay the $170,000 difference in funding amounts until 29 days later on April 11, 2012. Mr. Briner never notified our client nor received permission for use of this money. Possibly the funds were deposited into one of his own personal or company accounts since they could not be traced to any Revere Investments account.

### V. Allocation of Expenses of Revere HYD Fund versus Revere Capital versus Revere Investments:

Revere Investments and similar entities whose principal business purpose is to service its loans and investors, do not normally have any significant operating expenses aside from nominal administrative and overhead costs related to the servicing of those loans. For purposes of our initial review, our client asked us to review beginning approximately December 1, 2011 and going forward. The logic is that this is the approximate date that our client became aware of the servicing agent's gross mismanagement and incorrect allocation of certain Fund and Revere Capital, LLC (the servicing agent's wholly-owned entity) operating expenses. We can approximate that around 15-20% of the expenses have a clear business expense related to Revere Investments, and therefore are actual obligations of RI. However, the vast majority does not appear to have been for the benefit of Revere Investments, nor for any business purpose or intention of Revere Investments, and have nevertheless been borne by or allocated to Revere Investments. This apparent incorrect allocation of expenses has created a two-fold situation; i) since most of the operating expenses of the Fund have been allocated to Revere Investments, the net profits in the Fund are artificially high which has produced incorrect and overstated returns to the investors which could then potentially mislead investors regarding their investment decisions and the current/future fiscal health of the Fund. In addition, any prospective investors who look at the Fund's fiscal situation could be potentially mislead. ii) Expenses related to Revere Capital's own business activities and interests have been incorrectly allocated to Revere Investments. Because of the systematic nature of charging the expenses to RI, even after our client brought the situation to Mr. Briner's attention, we can only conclude that these expenses have been intentionally misallocated and for the sole benefit of Revere Capital and its sole-owner, Clark Briner. He has been, it appears, subsidizing his personal wholly-owned company by stealing profit from a jointly-owned entity. Our review of the expenses has led us to believe that a substantial portion of the expenses incurred should have been allocated to either the Revere High Yield Debt Fund or to Revere Capital alone.

The effect of Mr. Briner's misallocation and commingling of Fund and Revere Capital expenses to Revere Investments has been that investor returns at the Fund level are artificially higher, thus ultimately misleading Fund investors as to the current financial situation of the Fund. A significant number of expenses currently being incurred by Revere Investments should either be i)Fund expenses (to the extent it relates to Fund activities) or ii) Revere Capital expenses. Mr. Briner has stated to our client that any benefit that is derived from his effort not applicable to the Fund is for his sole benefit and that thus he is no longer working in the best interest of Revere Investments. The information found during our review indicates to us that Mr. Briner is currently working for the sole benefit of his own company, Revere Capital, and subsequently trying to allocate as many expenses to Revere Investments. As explained previously, an entity such as Revere Investments, whose sole purpose is to service loans and its investors, generally will have very few operating expenses except for the specific expenses related to servicing those loans. Typically, these expenses will be incurred by a service agent and then the portion of those expenses which relate to servicing loans would be reimbursed to the agent. From our review of our client's general ledger and the corresponding supporting invoices provided by Mr. Briner, it is our professional judgment that Revere Investments is incorrectly absorbing a large portion of the cost of expenses

which not only relate to the Fund but of expenses which have solely benefited Mr. Briner and/or his own personal investments.

Typical expenses might include payroll for administrative services, an allocation of rent expense, and other allocated expenses such as insurance, telephone, office supplies, and postage. Generally there would be a signed agreement whereby the servicing agent and loan servicing company agree to a specific amount or method of allocating expenses. For administrative services, an employee or contractor would keep track of how much time was actually spent performing duties for each of the entities and then that portion of the employee's salaries would be allocated accordingly. From what we have observed during this review, it appears that 100% of the bookkeeper's time spent working in the office has been allocated to Revere Investments. There is no documentation that she has received payment nor allocated any of her time from or to any other entity. For the period of our review, we have noted in excess of $34,000 in compensation for bookkeeping services which should not have been charged to RI. From our client's estimation, perhaps only 15% or less of the bookkeeper's time was dedicated to performing services for RI. The remainder of the time was spent performing duties for either the Fund or on Mr. Briner's own company, since the office where the work is performed is also occupied by Mr. Briner's company. Although we did not visit the physical office, our client has obtained photographic evidence that the business name outside of the office for which Revere Investments pays, does not display the title "Revere Investments" anywhere. It does, however, have "Revere Capital" clearly displayed both inside and outside of the building. We believe that this $34,000 or more of expense should have been paid for by the Fund or by Mr. Briner's own company, Revere Capital. When a detailed timesheet of the bookkeeper's time was requested from Mr. Briner, only a single pay period was provided and it did not explicitly state what work was being done. It only stated the amount of hours spent working in total.

We recommend that a more detailed review of expenses incurred by Revere Investments needs to be performed in order to determine which entity they should be allocated to. Considering Mr. Briner's apparent desire to build his own company, Revere Capital, any expense done for the benefit of that entity, should be borne solely by that entity. To the extent that the Fund benefits, that expense should be allocated accordingly.

*Sample of expenses borne by Revere Investments:*

| **Revere Capital** | **Fund** |
|---|---|
| - Mr. Briner's travel expenses ($8,748) | -Robby & Tommy(capital placement agents) expenses ($12,539) |
| - Food/beverage expenses not related to Revere Investments activities ($9,254) | - Bookkeeping services (estimate at least $34,000) |
| - Revere Capital Marketing/website expenses ($7,441) | - Fund servicing expenses |
| - Revere Capital office expenses ($7,501) | - Fund office expenses |
| - All other ancillary expenses not related to the core business of Revere Investments for the benefit of Revere Investments (in excess of $15,000) | - Fund deal expenses |

*Note: Mr. Briner has even allocated Revere Capital legal bills pertaining to an earlier attempt to purchase the Revere Investments, LLC company/trademarks for Revere Capital and other Revere Capital expenses/opportunities. On July 24th, 2012, the same day that he received the notice of lawsuit from our client, he reimbursed some of those expenses to RI. This could be perceived as an admission of incorrect allocations and/or wrong-doing, given that our client only requested invoices for those charges and never specifically asked him to reimburse those expenses.*

*Other employee:* In addition to RI currently paying 100% of the bookkeeper's salary and expenses, Mr. Briner hired Mike Gionne against our client's consent or approval. Technically, Mr. Gionne was hired as a RI employee in order to locate potential deals for the Fund. However, when this employee located a deal, he was instructed, presumably by Mr. Briner, to take the revenue generated off the deal and to deposit it into a Revere Capital account. The revenue from any deals should have been allocated to the Fund and/or RI since those entities are bearing all the expenses and while he was hired as an employee of Revere Investments, he should be working in its best interest. Revere Investments is the entity which pays this employee's salary and expenses yet, according to our client, he presents himself as a "Revere Capital" employee. Throughout his employment, this employee has only sourced one deal which was originated in RC, of which Mr. Briner has taken 100% of the profit without Mr. Saunders' knowledge/permission.

*Other expenses:* RI has been bearing the cost of expenses related to marketing emails, website maintenance, laptops, note cards, holiday cards, donations, etc, all of which have been mostly or entirely for the sole benefit of Revere Capital.

*Other item directly affecting a former Member, Sloan Saunders:* During April 2012 Revere Investments filed the partnership's regulatory federal and state tax filings with the IRS and Connecticut. Included in the filings was a 2011 Connecticut Form CT-1065, Composite Income Tax Return. This is a tax return filed on behalf of partners who are members in a CT partnership. The tax return calculates each partner's share of the CT-source income, their CT tax liability and further, remits payment of the tax due. A Schedule CT K-1T is also generated, which is then supposed to be provided to each member of the partnership. For the period of Sloan Saunders' ownership of RI during 2011 he was provided with a copy of a Federal Schedule K-1 however, for reasons unknown, he was never given a copy of his CT K-1T, which was important to the filing of his own personal income tax returns. Due to the absence of the K-1, Mr. Sloan erroneously filed and paid $7,700 in taxes to the State of CT. Those taxes can, however, be requested to be refunded from the state, but we estimate that it will cost Mr. Saunders from $800 to $1,000 in accounting fees for the actual preparation of the erroneous original tax returns, preparation of amended tax returns, accounting fees for correspondence with the State of CT related to the tax payments which he made, as well as any bank interest that he would have earned had he not made the tax payments, which were not required.

## VI. Self dealing:

*Partnership decisions:* Mr. Briner has made decisions not apparently in the best interest of Revere Investments and without approval from the other managing member. He has apparently on numerous occasions entered into agreements with related and non-related entities without consulting Mr. Saunders, or obtaining the appropriate documentation, which has subsequently been detrimental to Revere Investments' profitability. (i.e. Participation agreements with Revere Capital, using Revere Investments capital without permission for personal gain, diverting Fund due diligence revenue to personal accounts, originating Fund loans in personal entities without

permission/authority, Mortgage servicing software acquired by Revere Capital and charged to RI, see below), among other examples. Given the amount of flawed or mistaken actions taken by Mr. Briner which have benefitted him or his own Company and were often changed only when it was brought to his attention, one can possibly begin to see a pattern of potential negligence and/or intentional deception.

*Mortgage Servicing software*: Mr. Briner hired a consultant to diligence the best/most appropriate mortgage servicing software for the Fund and expensed the consultant's services through Revere Investments. Mr. Briner then subsequently purchased the consultant's recommended mortgage software in Revere Capital's name and subsequently leased it back to Revere Investments with a payback period of 3-3.5 years, after which time Revere Capital would break even on its lease and start profiting from that arrangement while owning the asset 100%. Meanwhile, it is anticipated that the Fund would need to use the software for at least the next three to four years. Moreover, all of the software's expenses are being borne by Revere Investments. The rationale for purchasing the software was for the benefit of the Fund. Additionally, all communications to investors and the branding of the software is being done in Revere Capital's name to ultimately help promote that entity.

Horowitz & Ullmann, P.C., CPA's
by:

Frederick C. Henning                         Leonardo Flores

# PROPOSED COMPLAINT

FST-CV 12-6031716-S

| | | |
|---|---|---|
| REVERE INVESTMENTS, LLC | : | SUPERIOR COURT |
| | : | |
| Plaintiff, | : | JUDICIAL DISTRICT OF |
| | : | FAIRFIELD |
| vs. | : | |
| | : | AT BRIDGEPORT |
| CLARK BRINER, *et al.,* | : | |
| | : | |
| | : | APRIL ___, 2013 |
| Defendants, | : | |
| and | : | |
| | : | |
| ROGER L. SAUNDERS, | : | |
| | : | |
| Plaintiff by Intervention, | : | |
| | : | |
| vs. | : | |
| | : | |
| CLARK BRINER, REVERE CAPITAL, LLC | : | |
| (TEXAS), REVERE CAPITAL, LLC | : | |
| (CONNECTICUT), MADISON MOTT, INC., | : | |
| REVERE HIGH YIELD FUND, L.P., AND | : | |
| REVERE CAPITAL MANAGEMENT, LLC | : | |
| | : | |
| Defendants by Intervention. | : | |

## PROPOSED COMPLAINT IN INTERVENTION

Roger L. Saunders, having moved to intervene in the above-captioned matter pursuant to

Conn. Gen. Stat. § 52-107, brings this Complaint in Intervention to enforce any causes of action

1

and proceeds resulting from any judgment, settlement, or other resolution to which Revere Investments, LLC ("Revere Investments") is entitled.

1.    The Plaintiff, Revere Investments, LLC ("Revere Investments") is a Connecticut limited liability company with a principal place of business at 20 Ketchum Street, Westport, Connecticut 06880.

2.    The Defendant, Clark Briner ("Briner") is an individual and a resident of the state of Connecticut.

3.    The Defendant, Revere Capital, LLC (Texas) ("Revere Capital Texas") is a Texas limited liability company with a principal place of business at 20 Ketchum Street, Westport, Connecticut 06880.

4.    The Intervening Plaintiff, Roger L. Saunders ("Saunders") is an individual and a resident of the State of Connecticut.

5.    The Defendant by Intervention, Revere Capital, LLC (Connecticut) ("Revere Capital Connecticut") is a Connecticut limited liability company with a principal place of business at 20 Ketchum Street, Westport, Connecticut 06880.

6.    Revere High Yield GP, LLC ("Revere GP") is a Connecticut limited liability company with a principal place of business at 20 Ketchum Street, Westport, Connecticut 06880.

7.     The Defendant by Intervention, Madison Mott, Inc. ("Madison") is a Connecticut Corporation with a principal place of business at 20 Ketchum Street, Westport, Connecticut 06880.

8.     The Defendant by Intervention, Revere High Yield Fund, L.P. ("Fund II") is a Delaware limited partnership with a principal place of business of 20 Ketchum Street, Westport, Connecticut 06880.

9.     The Defendant by Intervention, Revere Capital Management, LLC, ("Revere Management") is a Connecticut limited liability company with a principal place of business of 20 Ketchum Street, Westport, Connecticut 06880.

10.    On or around February 26, 2009, the limited liability company Revere Investments was formed by Saunders' successor in interest and Revere Capital Texas. Pursuant to the applicable Operating Agreement, Saunders owned fifty percent (50%) of Revere Investments and Revere Capital Texas, which is wholly owned by Briner, owned the remaining fifty percent (50%) of Revere Investments.

11.    Pursuant to Revere Investments Operating Agreement § 3.1, the business of Revere Investments "shall include all aspects involved in the business of high yield and hard money first and second mortgage lending".

12.    Revere Investments utilized an investment structure whereby, on a deal-by-deal basis, Revere Investments would pay investors a set interest rate on their investment and any

profit earned above the investors' return is split equally (50/50) between Saunders and Revere Capital Texas, Briner's entity. Pursuant to its Operating Agreement, Revere Investments is to pay for all expenses related to the on-going business and revenue generation for the benefit of Revere Investments.

13. Pursuant to Revere Investments Operating Agreement § 5.1, "The Managers shall together direct, manage, and control every aspect of the business of the Company to the best of their ability".

14. Since the formation of Revere Investments, Saunders and Briner had agreed that it was Saunders' principal obligation and duty to find investment opportunities for the benefit of Revere Investments, and that it was the principal obligation and duty of Briner to find investors and capital for the benefit of Revere Investments.

15. To the extent that Revere Investments could not originate the entire loan, investor money was raised on a co-investment basis. When insufficient investor money was raised by Briner, Saunders provided "bridge financing" so that the loans could be originated. All the profits and related expenses were to be allocated to Revere Investments and accordingly split equally (50/50) between Saunders and Briner and/or Revere Capital.

16. Briner is the sole owner, member, and manager of Revere Capital. By agreement between Saunders and Briner, any profits derived from the business and efforts of Revere Capital

4

shall be allocated to Revere Investments and spilt equally (50/50) between Saunders and Briner and/or Revere Capital Texas.

    17.   Revere GP is owned equally by Saunders (50%) and Briner (50%).  The formation and management of Revere GP is governed by a Limited Liability Company Agreement executed by Saunders and Briner.  Revere GP is the General Partner of Revere High Yield Debt Fund, L.P. ("Fund"), a discretionary real estate debt fund organized under the laws of the State of Delaware.

    18.   In approximately May, 2011, Revere GP organized the Fund with the goal of co-mingling historical and potential Revere Investments' investors, as well as investors generated by Defendant Briner.  Similarly to Revere Investments, by agreement between Saunders and Briner, it was the principal duty and obligation of Saunders to find investment opportunities and the principal duty of Briner to find capital.

    19.   To the extent the Fund could not originate the entire loan, investor money was raised on a co-investment basis and all the profit and related expenses incurred in connection therewith were to be allocated to Revere Investments and accordingly split equally (50/50) between Saunders and Briner and/or Revere Capital Texas.

    20.   The management company for the Fund is Revere GP but Briner acted as Servicing Agent without regard to any other Member and/or Manager.

21.    Pursuant to Section 5.4 of the Operating Agreement of Revere Investments, Briner and Revere Capital Texas were not permitted to compete with Revere Investments "by owning, being employed by, consulting for and/or participating in a business relating to high yield and hard money first and second mortgage lending".

22.    In December 2012, Briner formed a competing fund, Fund II.  Briner also formed Revere Management, the general partner of Fund II, in November 2012.

23.    Briner, Revere Capital Texas, and Revere Capital Connecticut have been marketing the track records of Revere Investments as the accomplishments solely of Briner and Revere Capital.   For example, the misuse of the track record includes, but is not limited to, the following:

      i.     Briner has created a Revere Capital pitch book that details deals that were sourced by Revere Investments and includes people on the management team employed by Revere Investments;

     ii.     Briner has created a Revere Capital website that displays "case studies" that include references to Mixed Use Loan Acquisition, which were deals that were consummated and performed by Saunders without the assistance of Briner or Revere Capital.;

        iii.     Briner has created Fund II, which has a name substantially similar to the Fund, namely Revere High Yield Fund, L.P. The track records of Revere Investments have been used to market Fund II, including the existing investors that participated in Revere Investments' prior deals and invested in the Fund.

24.     Approximately from February 26, 2009 to date, Briner,   Revere Capital Texas, and Revere Connecticut caused financial injury and misappropriated money, which rightfully belonged to Revere Investments, for their own benefit. Specifically, Briner, Revere Capital Texas, and Revere Capital Connecticut engaged in the following conduct, set forth in subsequent paragrapahs.

25.     Briner, Revere Capital Texas, and Revere Capital Connecticut by way of deceptive practices, common schemes and artifices including fraud, deceit and misrepresentation have been underpaying Fund investors through erroneous accounting practices. By way of example, not limitation, Briner as servicing agent paid Fund investors only on their net investment in loans and not on their gross investment.

26.     Briner, Revere Capital Texas, and Revere Capital Connecticut by way of deceptive practices, common schemes and artifices including fraud, deceit and misrepresentation have been underpaying Fund investors on ancillary fees and revenues earned.

27.     Briner, Revere Capital Texas, and Revere Capital Connecticut by way of deceptive practices, common schemes and artifices including fraud, deceit and misrepresentation engaged in misallocating interest and points earned at origination causing significant underpayment to Fund investors and Saunders.

28.     In their scheme to convert, steal or otherwise defraud Saunders of money he was rightfully entitled to, Briner, Revere Capital Texas, and Revere Capital Connecticut engaged in an on-going commingling and misallocation of expenses and incorrect financial reporting of Revere Investments. By way of example, and not limitation, Briner and Revere Capital allocated or charged approximately $104,000.00 of expenses to Revere Investments unrelated to the business purposes or operations of Revere Investments.

29.     In their scheme to convert, steal or otherwise defraud Revere Investments of money it was rightfully entitled to, Defendants Briner, Revere Capital Texas, and Revere Capital Connecticut allocated loan revenue to Briner's personally owned entities Revere Capital Texas and Revere Capital Connecticut.

30.     In their scheme to convert, steal or otherwise defraud Revere Investments of money it was rightfully entitled to, Defendants Briner, Revere Capital Texas, and Revere Capital Connecticut engaged in intentional incorrect and misleading application of accounting methodology.

31.     In their scheme to convert, steal or otherwise defraud Revere Investments of money it was rightfully entitled to, Briner and/or Revere Capital Texas formed Revere Capital Connecticut, a mirror/duplicate entity with the identical name as Revere Capital Texas, for the purposes of diverting money, misleading those dealing with the company and to confuse and deceive Revere Investments as to financial obligations, fees, duties, accounting methodology, profits and finances.

32.     In their scheme to convert, steal or otherwise defraud Revere Investments of money it was rightfully entitled to, Briner, Revere Capital Texas, and Revere Capital Connecticut have concealed and refused to disclose certain key documents in connection with an audit of the company commenced by Revere Investments through Saunders.

33.     In their scheme to convert, steal or otherwise defraud Revere Investments of money it was rightfully entitled to, Briner, Revere Capital Texas, and Revere Capital Connecticut engaged in the unauthorized taking of profits generated from Revere Investments' investors through the utilization of Revere Investments reputation, proven track record, experience, revenue and sourcing.

34.     Briner, Revere Capital Texas, and Revere Capital Connecticut engaged in the self-dealing, unauthorized manipulation, misallocation and diversion of Revere Investments'

profit and assets for his own benefit and the benefit of his personally owned entities, Revere Capital Texas and Revere Capital Connecticut.

35.     Briner, Revere Capital Texas, and Revere Capital Connecticut by way of deceptive practices, common schemes and artifices procured money, including bridge financing, from Saunders by means of false pretenses, fraud and misrepresentations.

36.     Briner, Revere Capital Texas, and Revere Capital Connecticut have converted, failed and refused to turnover money and compensation belonging to Revere Investments.

37.     Briner,  Revere Capital Texas, and Revere Capital Connecticut by way of deceptive practices, common schemes and artifices has concealed and or diverted the 15% Asset Management Fee legally due, owing, and belonging to Saunders while simultaneously paying Briner 85% of the Asset Management Fee.

38.     Briner, Revere Capital Texas, and Revere capital Connecticut by way of deceptive practices, common schemes and artifices have misrepresented the ownership of Revere Capital Texas and Revere Capital Connecticut, by using Revere Investments' name, reputation, contacts and relationships for purposes of marketing and raising capital.

39.     Briner, Revere Capital Texas, and Revere Capital Connecticut have failed to honor the obligations, duties and responsibilities to Saunders as 50% owner of Revere Investments.

40.     Briner, Revere Capital Texas, and Revere Capital Connecticut by way of fraud, deceit and misrepresentation induced the Saunders to identify investment opportunities to Briner and Revere Capital Texas to the detriment of Revere Investments.

41.     Briner, Revere Capital Texas, and Revere Capital Connecticut by way of deceptive practices, common schemes and artifices including fraud, deceit and misrepresentation have engaged in improper self-dealing damaging Revere Investments and the Fund by entering into agreements with their related and non-related entities without consulting Saunders, as 50% member of Revere Investments and Revere GP and without authorization and appropriate documentation. By way of example, but not limitation, Briner entered into participation agreements with his personally owned companies Revere Capital Texas and/or Revere Capital Connecticut using Revere Investments' investors, loans, capital, experience and employees for personal gain.  Briner diverted due diligence revenue to his personal accounts and/or personal entities and Briner originated unauthorized loans and/or diverted loans in/to personal or related entities.

42.     Briner,  Revere Capital Texas, and Revere Capital Connecticut hired a consultant to perform due diligence on the best and most appropriate mortgage servicing software for the Fund then improperly expensed the consultant's services through Revere Investments.

43.     Briner, Revere Capital Texas, and Revere Capital Connecticut purportedly purchased the consultant's recommended mortgage servicing software for the Fund, with the branding of the software in Revere Capital's name to promote Briner's personally owned entities. Briner in an act of self-dealing leased the software back to Revere Investments with a payback period of approximately 3.5 years, after which time Revere Capital Texas and/or Revere Capital Connecticut would break even in its lease and profit from the arrangement while owning 100% of the software.

44.     Briner,   Revere Capital Texas, and Revere Capital Connecticut are diverting business opportunity away from Revere Investments.

45.     Briner, Revere Capital Texas, Revere Capital Connecticut, and Madison did defraud Revere Investments of money to which it was rightfully entitled. Briner retained Madison, a marketing company, on numerous occasions whereby Madison would perform services exclusively for Briner, Revere Capital Texas or Revere Capital Connecticut. Despite knowing that no work was ever performed by Madison for Revere Investments, the invoices were submitted to Revere Investments, and Madison was paid by and accepted payment from Revere Investments, thereby increasing the expenses of Revere Investments and diminishing its profits.

46.    Briner, Revere Capital Texas, and Revere Capital Connecticut have been diverting loan profits into Revere Capital Texas and/or Revere Capital Connecticut, when they should go to Revere Investments, but paying a portion of the deal and Fund related expenses from Revere Investments. This has included, but is not limited to, travel expenses of almost $9,000.00, food and beverage expenses of over $9,000.00, website expense exceeding $7,000.00, and office expenses exceeding $7,500.00. Briner has further taken expenses of over $15,000.00 for capital placement agents out of Revere Investments and bookkeeping expenses of over $34,000.00.

47.    Briner, Revere Capital Texas, and Revere Capital Connecticut by way of deceptive practices, common schemes and artifices including fraud, deceit and misrepresentation have, without consent and in violation of agreements, have taken a significant portion of the profits of certain loans generated by Revere Investments by placing the loans in Revere Capital and/or Revere Capital Connecticut and diverting profits away from Revere Investments.

48.    Moreover, Briner and Revere Capital have usurped the accomplishments of Saunders, Revere Investments, and the Fund by including the track records of Saunders, Revere Investments, and the Fund in marketing materials, such as a pitch book and an internet site, that are provided to potential investors and existing investors of Revere Investments, Saunders, and

the Fund.   The conduct Briner and Revere Capital, if it continues, will cause irreparable financial harm to the Revere Investments.

49.   Revere Capital Texas is not only a defendant in this action, but also it is essentially a Plaintiff as Revere Capital Texas is a fifty percent owner/member of Revere Investments.   Briner is the sole owner of Revere Capital Texas.   As such, Briner, through Revere Capital Texas, is responsible for prosecuting the claims brought by Revere Investments in this action.   Therefore, it will be futile for Revere Investments to attempt to adequately litigate its claims against Defendants, as this would necessitate Briner, in effect, to prosecute himself.

## COUNT ONE

### (Common Law Fraud – Member Derivative Claim As To Defendants Briner, Revere Capital Texas, and Revere Capital Connecticut)

1-49.   Plaintiff by Intervention repeats and realleges paragraphs 1-49, as if fully set forth herein.

50.   Briner, Revere Capital Texas, and Revere Capital Connecticut knowingly made fraudulent misrepresentations and omissions of material facts by, among other things, making false and misleading statements and misrepresentations to Revere Investments regarding the handling, allocation and appropriation of clients, investors, financial matters, expenses and profits.

51.     Briner, Revere Capital Texas, and Revere Capital Connecticut made such representations and omissions of material facts with the actual intent that Revere Investments rely upon them, inducing Revere Investments to bring Briner new investment opportunities, to allow Briner to manage money matters, expenses and profit allocation, and to allow Briner to exploit the track record of Revere Investments and Saunders for Briner's own improper personal gain.

52.     Revere Investments reasonably relied upon such representations and omissions of material fact to its detriment and, among other things, did bring Briner, Revere Capital Texas, and Revere Capital Connecticut new investment opportunities, did allow Briner, Revere Capital Texas, and Revere Capital Connecticut to manage money matters, expenses and profit allocation, and did allow Briner to exploit the track record of Revere Investments and Saunders.

53.     Accordingly, Plaintiff by Intervention states that Revere Investments has been damaged in an amount to be determined at trial.

## COUNT TWO

### (Breach of Revere Investments Operating Agreement – Member Derivative Claim As To Revere Capital Texas)

1-53.     Plaintiff by Intervention repeats and realleges paragraphs 1-49, as if fully set forth herein.

54.     Saunders and Revere Capital Texas are parties to Revere Investments Operating Agreement dated February 26, 2009.

55.     Saunders, a member of Revere Investments, has fully performed his obligations pursuant to the applicable Operating Agreement of Revere Investments.

56.     Revere Capital Texas' refusal and failure to fulfill its obligations pursuant to the applicable Operating Agreements and other agreements with Saunders as to Revere Investments is a breach.  By example and not limitation, pursuant to Section 5.4 of the Operating Agreement of Revere Investments, Briner and Revere Capital Texas were not permitted to compete with Revere Investments "by owning, being employed by, consulting for and/or participating in a business relating to high yield and hard money first and second mortgage lending".

57.     Moreover, Revere Capital Texas failed to fulfill its obligations pursuant to the applicable Operating Agreement through the above described acts, including but not limited to acts of self-dealing, misallocation of profits and expenses, and misappropriation of track record, injuring the rights of Revere Investments.  For example and not limitation, pursuant to Section

5.7 of the Operating Agreement of Revere Investments, Briner and Revere Capital Texas were restricted to entering into relationships with third parties wherein transactions were performed in good faith and not on materially less favorable terms then would be obtainable from an unrelated party. Further, the nature of the relationship between Briner and Revere Capital Texas and the terms of the transaction were to be disclosed to and approved by a majority interest of the membership of Revere Investments.

58.     Accordingly, Plaintiff by Intervention Saunders states that Revere Investments has been damaged in an amount to be determined at trial.

### COUNT THREE

#### (Breach of Covenant of Good Faith and Fair Dealing – Member Derivative Claim As To Revere Capital Texas)

1-58.     Plaintiff by Intervention repeats and realleges paragraphs 1-49, as if fully set forth herein.

59.     Saunders and Revere Capital Texas were parties to the Revere Investments Operating Agreement, pursuant to which Revere Investments, reasonably expected to receive certain benefits.

60.     Revere Capital Texas engaged in the above described conduct that injured Revere Investments' right to receive its benefits.

61.    Revere Capital Texas was acting in bad faith when it committed the above described acts injuring the rights of Revere Investments to receive its benefit from the Operating Agreement.   For example and not limitation, pursuant to Section 5.4 of the Operating Agreement of Revere Investments, Briner and Revere Capital Texas were not permitted to compete with Revere Investments "by owning, being employed by, consulting for and/or participating in a business relating to high yield and hard money first and second mortgage lending".

62.    Moreover, Revere capital Texas was acting in bad faith when it committed the above described acts, including but not limited to acts of self-dealing, misallocation of profits and expenses, and misappropriation of track record, injuring the rights of Revere Investments. For example and not limitation, pursuant to Section 5.7 of the Operating Agreement of Revere Investments, Briner and Revere Capital Texas were restricted to entering into relationships with third parties wherein transactions were performed in good faith and not on materially less favorable terms then would be obtainable from an unrelated party.   Further, the nature of the relationship between Briner and Revere Capital Texas and the terms of the transaction were to be disclosed to and approved by a majority interest of the membership of Revere Investments.

63.    Accordingly, Plaintiff by Intervention states that Revere Investments was damaged in an amount to be determined at trial.

18

## COUNT FOUR

**(Violations of Connecticut Unfair Trade Practices Act – Member Derivative
Claim As To Briner, Revere Capital Texas, and Revere Capital Connecticut)**

1-63.    Plaintiff by Intervention repeats and realleges paragraphs 1-49, as if fully set forth herein.

64.    Briner, Revere Capital Texas, and Revere Capital Connecticut are "persons" engaged in "trade or commerce," as defined by Conn. Gen. Stat. § 42-110a.

65.    The above-described acts of Briner, Revere Capital Texas, and Revere Capital Connecticut constitute unfair and/or deceptive acts or practices in the conduct of a trade or business, in violation of Conn. Gen. Stat. §§ 42-110a et seq.

66.    Specifically, the unfair and deceptive business practices of Briner, Revere Capital Texas, and Revere Capital Connecticut include, but are not limited to, unauthorized use of Revere Investments' proven track record, experience, revenue, and sourcing, underpayment to investors regarding fees and revenue, misallocation of expenses, diversion of loan profits, and improper accounting practices.

67.    The conduct of Briner, Revere Capital Texas, and Revere Capital Connecticut went beyond professional negligence, and amounted to unscrupulous conduct that violates the entrepreneurial and/or business aspects of business and of financial advisory professions.

68.    The actions of Briner, Revere Capital Texas, and Revere Capital Connecticut constitute business practices that violates Conn. Gen. Stat. § 42a-110, et seq.

69.    Accordingly, Plaintiff by Intervention states that Revere Investments has been damaged in an amount to be determined at trial.

70.    Briner, Revere Capital Texas, and Revere Capital Connecticut are liable to Saunders for actual damages pursuant Conn. Gen. Stat. § 42a-110g and, at the discretion of the court, punitive damages, attorney's fees, and costs, pursuant to Conn. Gen. Stat. § 42a-110g.

## COUNT FIVE

### (Breach of Fiduciary Duty – Member Derivative Claim As To Revere Capital Texas)

1-70.    Plaintiff by Intervention repeats and realleges paragraphs 1-49, as if fully set forth herein.

71.    As a member of Revere Investments, Revere Capital Texas owed a fiduciary duty to Revere Investments.

72.    By virtue of the aforementioned conduct, Revere Capital Texas breached its fiduciary duty owed to Revere Investments, through conduct including but not limited to, the diversion of loans and revenues from Revere Investments, the misallocation of

expenses to Revere Investments, and the misappropriation of Revere Investments' historical performance data.

73.    Accordingly, Plaintiff by Intervention states that Revere Investments was damaged in an amount to be determined at trial.

## COUNT SIX

### (Fraud – Member Derivative Claim As To Briner, Revere Capital Texas, and Revere Capital Connecticut)

1-73.    Plaintiff by Intervention repeats and realleges paragraphs 1-49, as if fully set forth herein.

74.    Briner, Revere Capital Texas, and Revere Capital Connecticut repeatedly made false statements regarding the accounting practices and financial condition of Revere Investments.  Briner, Revere Capital Texas, and Revere Capital Connecticut were aware that their statements were false.  Moreover, Briner, Revere Capital Texas, and Revere Capital Connecticut misallocated expenses, revenues, and ancillary fees.  These actions were for the purpose of redirecting money and misleading investors concerning financial obligations, fees, duties, accounting practices, and profits.

75.    The false statements were made by Briner, Revere Capital Texas, and Revere Capital Connecticut with the actual intent that Revere Investments would rely upon the false statements thereby inducing Revere Investments to bring Briner new

investment opportunities, to allow Briner to manage money matters, expenses and profit allocation, and to allow Briner to exploit the extensive business experience and track record of Revere Investments for Briner's own improper personal gain.

76.     Revere Investments reasonably relied upon representations by Briner, Revere Capital Texas, and Revere Capital Connecticut with respect to statements of fact concerning the accounting practices and financial condition of Revere Investments.  It was reasonable for Revere Investments to rely upon Briner, Revere Capital Texas, and Revere Capital Connecticut because they were in a position of trust and control.

77.     Accordingly, Plaintiff by Intervention Saunders states that Revere Investments has been damaged in an amount to be determined at trial.

### COUNT SEVEN

**(Statutory Theft – Member Derivative Claim As To As to Briner, Revere Capital Texas, Revere Capital Connecticut, Revere Management, and Fund II)**

1-77.     Plaintiff by Intervention repeats and realleges paragraphs 1-49, as if fully set forth herein.

78.     Briner, Revere Capital Texas, Revere Capital Connecticut, Revere Management, and Fund II intentionally, with calculation, design and larcenous intent, did deceive Revere Investments by wrongfully taking, obtaining and withholding Revere Investments' money and converting Revere Investments' money to Briner's own use and

permanently depriving Revere Investments of its money.  Moreover, Briner,   Revere

Capital Texas, Revere Capital Connecticut, Revere Management, and Fund II

intentionally, with calculation, design and with larcenous intent have taken and used the

track record of Revere Investments.

79.     The above described acts of the Briner,  Revere Capital Texas, Revere

Capital Connecticut, Revere Management, and Fund II constitute theft pursuant to Conn.

Gen. Stat. § 52-564.

80.     Accordingly, Plaintiff by Intervention Saunders states that Revere

Investments has been damaged in an amount to be determined at trial.

81.     Pursuant to § 52-564, Revere Investments is entitled to treble damages.

### COUNT EIGHT

**(Conversion of Funds – Member Derivative Claim As To Briner and Revere Capital)**

1-81.     Plaintiff by Intervention repeats and realleges paragraphs 1-49, as if fully set forth

herein.

82.     Briner, Revere Capital Texas, and Revere Capital Connecticut intentionally, with

calculation, design and with larcenous intent did deceive Saunders wrongfully taking, obtaining,

exercising control over and withholding Revere Investments' money to convert Revere

Investment's money to the use of Briner, Revere Capital Texas, and Revere Capital Connecticut and permanently deprive Revere Investments of its money.

83.     Accordingly, Plaintiff by Intervention states that Revere Investments has been damaged in an amount to be determined at trial.

84.     Revere Investments is entitled to treble damages as a result of the conversion.

## COUNT NINE

### (Unfair Competition and False Advertising Under the Lanham Act – Member Derivative Claim As To Briner, Revere Capital Texas, Revere Capital Connecticut, Revere Management, and Fund II)

1-84.     Plaintiff by Intervention repeats and realleges paragraphs 1-49, as if fully set forth herein.

85.     This claim arises under 15 U.S.C. § 1125(a).

86.     Briner, Revere Capital Texas, Revere Capital Connecticut, Revere Management, and Fund II have made false and/or misleading representations of fact concerning the track record of Briner and Revere Capital.

87.     Briner, Revere Capital Texas, Revere Capital Connecticut, Revere Management, and Fund II have claimed the track record of Revere Investments as their own when attempting to secure investors for Briner's solely owned entities.

88.     The false statements and misleading representations have been made in commercial advertisements and/or promotional materials provided to potential investors.

89.     The deception by Briner, Revere Capital Texas, Revere Capital Connecticut, Revere Management, and Fund II is material and likely to influence the decisions of potential investors as to whether to invest with Briner, Revere Capital Texas, Revere Capital Connecticut, and Fund II and the improper use of the track records of Revere Investments is likely to create confusion among potential investors.

90.     The foregoing false statements and misrepresentations constitute unfair completion and have caused damage to the reputation and business of Revere Investments.

91.     Accordingly, Plaintiff by Intervention states that Revere Investments has been damaged in an amount to be determined at trial.

92.     The improper activities of Briner,  Revere Capital Texas, Revere Capital Connecticut, Revere Management, and Fund II, as described herein, have been willful and deliberate, thereby making this as exceptional case under the Lanham Act pursuant to 15 U.S.C. § 117(a) to justify awarding Revere Investments additional relief including an award of attorneys' fees and costs.

**COUNT TEN**

**(Facilitation of Breach of Fiduciary Duty –
Member Derivative Claim Against Madison Mott, Inc.)**

1-92.      Plaintiff by Intervention repeats and realleges paragraphs 1-49, as if fully set forth herein.

93.      Madison encouraged Briner and Revere Capital Texas to breach the fiduciary duties owed to Revere Investments by assisting Briner and Revere Capital Texas in distributing the various marketing materials and/or facilitation of such distribution by providing web hosting services of their false historical performance to potential and existing investors in Fund II, as well as investors in the Fund and Revere Investments and charging various expenses of Briner, Revere Capital Texas, and Revere Capital Connecticut to Revere Investments.

94.      Accordingly, Plaintiff by Intervention Revere Investments has been damaged in an amount to be determined at trial.

95.      By knowingly participating in Briner's and Revere Capital Texas' breach of fiduciary duty, Madison is jointly and severally liable for all compensatory damages caused by the breaches of Briner and Revere Capital Texas, in an amount to be determined at trial.

## COUNT ELEVEN

### (Violations of Connecticut Unfair Trade Practices Act – Member Derivative Claim Against Madison)

1-95.     Plaintiff by Intervention repeats and realleges paragraphs 1-49, as if fully set forth herein.

96.     Madison is a "person" engaged in "trade or commerce," as defined by Conn. Gen. Stat. § 42-110a.

97.     The above-described acts of Madison constitute unfair and/or deceptive acts or practices in the conduct of a trade or business, in violation of Conn. Gen. Stat. § 42110a *et seq.*

98.     The conduct of Madison went beyond professional negligence, and amounted to unscrupulous conduct that violates the entrepreneurial and/or business aspects of business and of financial advisory professions.

99.     As a direct and proximate result of the conduct of Madison as described above Plaintiff Saunders has suffered an ascertainable loss.

100.     Accordingly, Plaintiff by Intervention states that Revere Investments has been damaged in an amount to be determined at trial.

**WHEREFORE,** Intervening Plaintiff, Roger L. Saunders respectfully prays for relief and judgment be awarded to Revere Investments as follows:

1.      An order of equitable and legal relief requiring Defendants and Defendants by Intervention to return any and all monies wrongfully obtained to Revere Investments without delay;

2.      An order directing that any judgment awarding monetary damages be held in a constructive trust and that any party found to have contributed to the cause of said monetary damages, not be entitled to the benefits of such monetary judgment.

3.      Awarding the Plaintiff Revere Investments punitive damages to the extent of Revere Investments' entitlement thereto under applicable laws, including pursuant to Conn. Gen. Stat. § 42-110g(a);

4.      Awarding the Plaintiff Revere Investments costs and attorneys' fees under applicable law, including Conn. Gen. Stat. § 42-110g(d) and Conn. Gen. Stat. § 36b-29(a);

5.      A temporary and permanent Order of Injunction enjoining and restraining Defendants and Defendants by Intervention from selling, transferring, disposing or hypothecating any assets or investment funds without permission of this court;.

6.      A temporary and permanent Order of Injunction enjoining and restraining Defendants and Defendants by Intervention from utilizing the track records of Revere Investments;

7.    Awarding the Plaintiff Revere Investments compensatory and incidental damages against all Defendants and Defendants by Intervention;

8.    Awarding the Plaintiff Revere Investments actual damages pursuant to Conn. Gen. Stat. § 42-110g(a);

9.    Awarding the Plaintiff Revere Investments punitive damages to the extent of Revere Investments is entitled thereto under applicable laws, including pursuant to Conn. Gen. Stat. § 42-110g(a);

10.    Pursuant to Conn. Gen. Stat. § 42a-110g(a), letters have been sent to the Attorney General and the Department of Consumer Protection;

11.    Awarding the Plaintiff Revere Investments and Plaintiff by Intervention Saunders all costs and disbursements they incurred in this action;

12.    Awarding the Plaintiff Revere Investments treble damages pursuant to Conn. Gen. Stat. § 52-564; and

13.    Awarding the Plaintiff Revere Investments such other and further relief, both

legal and equitable, as the Court, in its discretion, may deem just and proper.

THE INTERVENING PLAINTIFF
ROGER L. SAUNDERS


By:    */s/ Joseph M. Pastore III*
        Joseph M. Pastore III
        Stephen A.DeBernardis
        Pastore & Dailey LLC
        4 High Ridge Park, 3rd Floor
        Stamford, CT 06905
        Phone: (203) 658-8454
        Fax: (203) 248-0852
        Juris No. 433711



His attorneys

30

## CERTIFICATION

This is to certify that a copy of the foregoing was sent first class mail this _____ day of April, 2013 to the following counsel and pro-se parties of record:

David S. Hoopes, Esq.
Mayo Crowe LLC
185 Asylum Street
Hartford, CT 06103

Stuart Michael Katz, Esq.
Cohen & Wolf PC
P.O. Box 1821
Bridgeport, CT 06601

Bruce A. Foodman, Esq.
One Morningside Drive N.
Building A, 3rd Floor
Westport, CT 06880

By: */s/ Joseph M. Pastore III*
Joseph M. Pastore III

31

EXHIBIT C

| DOCKET NO.:  UWY-CV-12-6019328-S | : SUPERIOR COURT |
|---|---|
| | : COMPLEX LITIGATION DOCKET |
| REVERE INVESTMENTS, LLC, ET AL. | : JUDICIAL DISTRICT OF WATERBURY |
| VS. | : AT WATERBURY |
| CLARK BRINER, ET AL. | : MAY 14, 2013 |

### NOTICE OF FILING NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446(d), the Defendants, Clark Briner and Revere Capital, LLC, give

notice to this Court and counsel for the Plaintiff, Revere Investments, LLC and the Intervening Plaintiff,

Roger L. Saunders, that the Defendants have filed a Notice of Removal for the purpose of removing this

action to the United States District Court for the District of Connecticut.  A copy of the Notice of

Removal (and supporting exhibits) is attached as Exhibit A.

THE DEFENDANT,
CLARK BRINER and REVERE CAPITAL, LLC

By:_____/s/_____
David S. Hoopes
Jay R. Lawlor
Mayo Crowe LLC
CityPlace II
185 Asylum Street
Hartford, CT 06103-3426
Telephone: (860) 275-6800
Juris No. 423839
Its Attorneys

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, to all counsel and pro se parties of record on this 14th day of May, 2013, as follows:

Bruce A. Foodman, Esq.
One Morningside Drive N.
Building A, 3rd Floor
Westport, CT 06880

Joseph M. Pastore, III, Esq.
Pastore & Dailey LLC
4 High Ridge Park, 3rd Floor
Stamford, CT 06905

_____ /s/_____ ___
David S. Hoopes